UNITED STATES of America,
Plaintiff-Appellee,

v.

John SHANAHAN, Defendant-Appellant.

No. 77–5742

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 12, 1978.

Theodore J. Sakowitz, Federal Public Defender, Joel Kaplan, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Caridad P. Matthews, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

Once again we are faced with another "broken pre-plea agreement", which unfortunately seems to be a pattern of practice engaged in by some personnel of United States Attorneys' offices. Usually, one assistant makes an agreement but does not appear at either the plea hearing or sentencing, but rather sends another assistant unfamiliar or in disagreement with the ear-

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

lier understanding, thus causing confusion or serious breaches. This case adds a new twist.

On July 18, 1977, defendant, John Shanahan, surrendered himself to agents of the Drug Enforcement Administration (DEA) upon learning a warrant had been issued for his arrest for sale of cocaine. Before being formally charged by indictment, the defendant, with the aid of counsel, negotiated a pre-plea agreement under which the government was to file a misdemeanor information and the defendant would plead guilty to the one count information. The information was filed on August 30, 1977, charging defendant along with his co-defendant, Paul Sylver,[1] with knowingly and intentionally possessing a controlled substance to wit: cocaine, in violation of 21 U.S.C. § 844(a)[2] and 18 U.S.C. § 2. On September 30, 1977, Shanahan changed his plea from not guilty to guilty in accordance with the plea agreement.

Prior to the acceptance of Shanahan's guilty plea, the trial court and the parties had the following colloquy:.

THE COURT: Have there been any promises made to you by the Government in connection with your pleading guilty?

DEFENDANT: No, there hasn't.

THE COURT: Plea bargains are permissible in this Circuit but it is necessary that you and each lawyer disclose any details of any promise made by the Government to you in connection with your plea of guilty.

Have there been anything, Mr. Kaplan?

MR. KAPLAN [Defense Counsel]: No. The agreement on the Information, but other than that there's been no agreement entered into between the Government and defendant.

MR. GALANTE [Assistant United States Attorney]: It's just what he would

---

1. On September 7, 1977, Sylver pled guilty to the charge against him. At that time, pursuant to 21 U.S.C. § 844(b)(1), the district court withheld the adjudication of guilt, deferred the proceedings and placed Sylver on one year probation.

> 21 U.S.C. § 844(b)(1)
>
> If any person who has not previously been convicted of violating subsection (a) of this section, any other provision of this subchapter or subchapter II of this chapter, or any other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, is found guilty of a violation of subsection (a) of this section after trial or upon a plea of guilty, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place him on probation upon such reasonable conditions as it may require and for such period, not to exceed one year, as the court may prescribe. Upon violation of a condition of the probation, the court may enter an adjudication of guilt and proceed as otherwise provided. The court may, in its discretion, dismiss the proceedings against such person and discharge him from probation before the expiration of the maximum period prescribed for such person's probation. If during the period of his probation such person does not violate any of the conditions of the probation, then upon expiration of such period the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this subsection shall be without

court adjudication of guilt, but a nonpublic record thereof shall be retained by the Department of Justice solely for the purpose of use by the courts in determining whether or not, in subsequent proceedings, such person qualifies under this subsection. Such discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction if a crime (including the penalties prescribed under this part for second or subsequent convictions) or for any other purpose. Discharge and dismissal under this section may occur only once with respect to any person.

2. 21 U.S.C. § 844(a) Penalty for simple possession:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II of this chapter. Any person who violates this subsection shall be sentenced to a term of imprisonment of not more than one year, a fine of not more than $5,000, or both, except that if he commits such offense after a prior conviction or convictions under this subsection have become final, he shall be sentenced to a term of imprisonment of not more than 2 years, a fine of not more than $10,000, or both.

be charged with; that was the only negotiation we had at all.

THE COURT: Very well.

Is that your understanding of it, Mr. Shanahan?

DEFENDANT: Yes.

R. p. 37–38.

After determining defendant was entering his plea freely and voluntarily, with a full understanding of his rights and that there was a factual basis for the plea, the trial court accepted defendant's guilty plea and requested that a presentence investigation (PSI) be performed.

In the routine course of preparing the report, the probation officer contacted the Assistant United States Attorney handling this case, who thereupon proceeded to outline the pre-plea agreement with a totally new condition:

Assistant U. S. Attorney, Edward Galante stated, initially the defendant was given a major concession by being charged under the misdemeanor statute. This was based on negotiation that *he would cooperate and reveal the names of others involved.*

(Emphasis added)

Supplemental Record, Presentence Investigation Report p. 10. This information was given to the probation officer by the same Assistant United States Attorney who was present at the entering of the guilty plea and who, in said proceeding, outlined the pre-plea negotiations without mentioning any such condition. (R. 37–38).

At the sentencing hearing, defense counsel objected to two portions of the PSI. The first objection involved statements by government agents that through a confidential informant they learned of defendant's alleged "heavy" dealings in cocaine. The second objection was that defense counsel's understanding of the pre-plea agreement was not the same as that set forth by Mr. Galante in the PSI.

The court, thereafter, called Special Agent Michael O'Connor to testify concerning the confidential informant's statements and the condition of the pre-plea agreement

that the defendant cooperate. That testimony proceeded as follows:

S/A O'CONNOR. . . . Now what his counsel said about his cooperation, the understanding was that we would let him plead to Information if he cooperated. His cooperation does not exist.

THE COURT: I thought you just testified that he called somebody else and you were able to seize six ounces?

S/A O'CONNOR: Yes, Your Honor, that's when he was arrested.

Now afterwards with Mr. Galante, the arrangements were that Mr. Shanahan would be able to plead to simple possession with his cooperation. He has not cooperated at all.

THE COURT: Has he identified any sources of supply?

S/A O'CONNOR: No, Your Honor.

THE DEFENDANT: Yes, I have.

S/A O'CONNOR: He made one attempt to introduce, allegedly not purchase some cocaine but set up an investigation. He met an individual in an apartment by himself. And that was the only time Mr. Shanahan has been in contact with our office. His cooperation does not exist, Your Honor.

R. 19–20.

This testimony is a brief excerpt from the lengthy discussion at the sentencing hearing as to whether or not defendant had cooperated with the government.

The principle of *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), governs the disposition of this case. That oft-repeated principle provides "that when a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499. See also *United States v. Grandinetti,* 564 F.2d 723 (5th Cir. 1977). In entering into the agreement articulated by the prosecutor at the change of plea hearing, it was not unreasonable for the defendant to expect

the agreement to remain unchanged. This was at least part of the inducement for this defendant's guilty plea. The government's subsequent modification of the terms of the agreement with statements to the trial court through the PSI and by the DEA agent that defendant had not performed as agreed must be considered a breach of that agreement for either of two reasons. First, if there really was no condition that the defendant cooperate in exchange for a misdemeanor information then it was a breach for the government at sentencing to so allege to the court through the PSI and the testimony of the DEA agent. Second, if cooperation was a condition of the pre-plea agreement, this fact should have been brought to the court's attention when the guilty plea was being accepted. It is manifestly unfair to add conditions to a plea bargain after the entry of a guilty plea and then seek a more severe sentence for a breach of such a condition. This record shows just such an effort.

In 1935, the Supreme Court aptly pointed out the United States Attorneys' obligations which still hold true today:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935). The Supreme Court's viewpoint must necessarily extend to the case where improper methods are used to influence the trial court at sentencing. The government's actions simply cannot be tolerated especially since the pre-plea agreement did not require the government to stand mute with respect to a recommendation of sentence. The government could have argued strenuously for the maximum sentence. As a matter of fact, at the sentencing the Assistant United States Attorney who substituted for Galante did argue "We strongly oppose any withholding of adjudication during the period of probation." (R. 17).[3] For the foregoing reason we vacate the sentence imposed by the trial court.

Neither the defendant nor the government have requested that the pre-plea agreement be voided or that the defendant be allowed to withdraw his guilty plea. The defendant does request as a remedy that if his sentence is vacated, his case be remanded for resentencing by another district judge. *United States v. Grandinetti,* 564 F.2d 723, 727 (5th Cir. 1977). An unfortunate problem which cannot help but arise when considering such a request is that we have no way of knowing the effect, if any, the government's misconduct had on the sentence imposed by the district court. Here, the trial judge committed no error, but because of the government's actions we have no alternative but to grant the relief requested by the defendant and remand the case to the district court for resentencing before a different district judge. At that hearing the United States Attorney is expected to abide by the terms of the pre-plea agreement.

Sentence vacated and remanded.

---

**3.** This statement was in response to defense counsel's statement in mitigation to the court. Defense counsel had noted that defendant's means of livelihood was based on a commodi-

ties broker's license which would be revoked if convicted and, therefore, asked the court to withhold adjudication as in the case of the co-defendant.