**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donna Faye AVERY,
Defendant-Appellant.**

**No. 78–5203.**

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1979.

James C. Hill, Circuit Judge, dissented and filed opinion.

Theodore J. Sakowitz, Federal Public Defender, Joel Kaplan, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Jack V. Eskenzzi, U. S. Atty., Linda C. Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

PER CURIAM:

This appeal concerns the interpretation of a plea agreement in which the government promised "that at the time of sentencing they will make no recommendation and stand mute." The defendant was indicted on four counts of unlawful possession and transportation of two short-barreled shotguns. The defendant agreed to plead guilty to Count III of the indictment, possession of an unregistered firearm, 26 U.S.C. § 5861(d), in return for the dismissal of the other three counts and the government's promise to remain mute at time of sentencing. Avery was sentenced to four years' imprisonment.

At the sentencing hearing defendant objected to a portion of the pre-sentence investigation report (PSI) that contained comments on the defendant's character made by the prosecutor and investigating agent:

> Alcohol, Tobacco and Firearms Agent Bill Velasco felt that the Defendant was not simply an innocent girl that was wrongly influenced by her boyfriend Carlos Chao, but rather a smart, manipulative woman that's been involved in numerous past illegal activities. He further commented she's presently a fugitive from Massachusetts, a chronic liar and ex-drug addict. After her arrest she made statements indicating where she and Chao purchased the weapons and that Chao was going to use them in a jewelry store robbery in Miami and to rob drug traffickers. Assistant United States Attorney Norton also felt the Defendant was not a novice in terms of criminal involvement; however, he did believe that she was strongly influenced by Chao and was subservient to him. In accordance with the Pre-Plea Agreement Mr. Norton will not make a recommendation as to sentencing.

The defendant argued that these comments in the PSI report violated the government's

plea agreement to stand mute at the time of sentencing. The court rejected this argument, concluding that the government was in "technical" compliance with the plea agreement and that it would ignore the challenged portions of the report.

█ In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433. The judge's disavowal of reliance on the contested portions of the report does not change the posture of the case. *Id.* In this case the question remains whether the plea agreement was breached.

█ Had the prosecutor stated in open court that the defendant was not new to criminal activity there would be no question but that the plea agreement was broken. A promise to make no recommendation and to stand mute means at the least that the prosecutor will say nothing to the judge that would influence the sentencing decision. *U. S. v. Miller*, 565 F.2d 1273, 1275 (CA3, 1977); *U. S. v. Crusco*, 536 F.2d 21, 26 (CA3, 1976).[1] This court also recognized in *U. S. v. Shanahan*, 574 F.2d 1228, 1230–31 (CA5, 1978), that statements made by the prosecutor to the trial court through the PSI can constitute a breach of a plea agreement. *See also U. S. v. Ewing*, 480 F.2d 1141 (CA5, 1973). *Shanahan*, however, is not determinative of this case. In *Shanahan* the parties agreed in open court that the only term of the plea agreement was that the defendant would plead guilty to possession of a controlled substance. The court accepted the defendant's plea and requested a PSI for the sentencing hearing. The PSI contained the following statement

> Assistant U. S. Attorney, Edward Galarte stated, initially the defendant was given a major concession by being charged under the misdemeanor statute.

This was based on negotiation that he would cooperate and reveal the names of others involved.

The *Shanahan* court concluded "the government's subsequent modification of the terms of the agreement with statements to the trial court through the PSI . . . must be considered a breach of that agreement." *Id.* at 1231. In *Shanahan* the meaning of the plea agreement was clear. The breach of the agreement resulted from the government's attempt to modify its terms.

In this case it is not clear whether the government's promise to stand mute at sentencing carried an implied promise to give no information to a probation officer that would be detrimental if seen by the judge. Nor does the record reveal what person made the promise or how the comments of Assistant United States Attorney Norton came to be in the PSI, whether through a normal course of events or otherwise. We do not know whether it was normal practice in the district court for the probation officer to ask questions of the United States Attorney(s) about the defendant's character and include them in his report. Did Norton seek out the probation officer in order to make the detrimental comments, and did he, or any other member of the United States Attorney's office, do indirectly what the government had promised not to do directly? If an interview by the probation officer with a member of the United States Attorney's staff was normal, were the comments in this instance volunteered or responsive to inquiries?

It seems to us that these and similar inquiries must be made. We cannot conclude that as a matter of law a promise by the government to stand mute at sentencing always implies that the staff of the United States Attorney's office will refrain from providing the probation officer with any detrimental information about the defendant, and the record before us does not provide the necessary factual information

---

1. We express no opinion on the Third Circuit's distinction between a promise not to recommend a sentence and a promise to take no position on sentencing. *U. S. v. Miller, supra* at 1275.

for an informed decision. We must vacate the district court's order and remand for further hearing.

The same kind of inquiry must, we think, be made with respect to the comments made by the investigating agent. We are not able to conclude whether the government's promise to stand mute implied that the investigating agent was also bound not to influence the judge's sentencing decision, and if it did what the scope of that promise included, bearing in mind the purposes of the operation of the probation office.

VACATED and REMANDED.

JAMES C. HILL, Circuit Judge, dissenting.

I would affirm.

I agree with my brothers that the government must strictly abide its plea bargain agreements. It may not unburden itself of the task of presenting the case at trial by making an agreement and, having done so, violate its undertakings, directly or indirectly. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Nothing in this record indicates such a transgression. It is not suggested that the prosecutor recommended a sentence. The record does show that the probation officer obtained background information for his judge. One government agent remarked upon the defendant's previous record to defendant's detriment. The prosecuting attorney's report was favorable to the defendant.

The judge is entitled to as much information as the probation officer can gather to assist him in fixing an appropriate sentence. I doubt that an agreement to *withhold* information from the sentencing judge would be lawful. When a prosecutor agrees to make no sentencing recommendation, he must assume that the judge will have all relevant facts before him, and he does not undertake to hide away from the court prior to sentencing to the end that the judge will be "kept in the dark" as to defendant's record, guilt, participation in the crime, etc.

There being nothing in the record to indicate that the prosecutor, contrary to his undertaking, sought directly or indirectly to recommend a sentence in this case, I conclude that the plea bargain was kept.