**UNITED STATES of America, Plaintiff,**

**v.**

**Donna Fay AVERY, Defendant.**

**No. 77–6094–Cr–NCR.**

United States District Court,
S. D. Florida,
Fort Lauderdale Division.

June 5, 1979.

J. V. Eskenazi, U. S. Atty., Miami, Fla., for plaintiff.

Theodore J. Sakowitz, Federal Public Defender, Miami, Fla., for defendant.

## ORDER

ROETTGER, District Judge.

Defendant Avery pleaded guilty to possession of unregistered firearms, namely sawed-off shotguns, in return for the dismissal of the other three counts and the Government's promise to remain mute at the time of sentencing. Following her being sentenced to four years' imprisonment she appealed claiming the plea agreement had been violated. The majority of the panel of the Court of Appeals remanded for a hearing to determine if the Government's promise to stand mute at sentencing carried an implied promise to give no information to her probation officer that would be detrimental to defendant if seen by the sentencing judge. 589 F.2d 906 (5th Cir. 1979).

An evidentiary hearing was held and testimony presented of the Special Assistant U. S. Attorney who handled the prosecution against Ms. Avery and her co-defendant, the case agent for the Government, and the probation officer who prepared the PSI.

Before proceeding to address the questions included in the majority opinion it would be helpful to set forth the practices of this court as to sentencing and the specific procedural development of the instant case. In keeping with this court's custom, the plea bargain contains no agreement as to the maximum sentence to be imposed as this court refuses to accept any plea agreement which limits the discretion of the sentencing judge as to the type of sentence to be imposed, the length of confinement, or the amount of the fine. In the colloquial language of the courtroom, the court does not accept a plea agreement that contains a "cap" on the sentence to be imposed. The discretion of the sentencing judge remained unfettered as a result of this plea agreement.

In the instant case both Ms. Avery and her boyfriend, Carlos Chao, were indicted as co-defendants for unlawful possession and transportation of two sawed-off shotguns,

one of them double-barrelled. They were shipped to Fort Lauderdale in a container by Greyhound Package Express. The container was flimsy enough that it broke open and the package handlers at Greyhound could see the sawed-off shotguns; they called the Fort Lauderdale police, who, in turn, notified the Bureau of Alcohol, Tobacco and Firearms. The package room was placed under surveillance for a period of ten days or so and co-defendants were arrested when they claimed the parcel.

Immediately prior to the selection of the jury, Ms. Avery pleaded guilty to one count but Mr. Chao elected to proceed to trial. Ms. Avery took the witness stand in support of Mr. Chao's defense and disputed the testimony of the Government's main witness; she also testified that she alone was involved in the transportation of the shotguns and that Mr. Chao merely drove her to the bus station and he knew nothing about the shotguns. The jury acquitted Mr. Chao.

## QUESTIONS IMPOSED BY THE MAJORITY OPINION

The questions of the Court of Appeals may be summarized briefly as follows: (1) Is it the normal practice in the Southern District of Florida for the probation officer to ask questions of the United States Attorney and the case agent about the defendant's character and include them in the report; (2) Did the Assistant U. S. Attorney or the case agent seek out the probation officer in order to make the detrimental comments; (3) If an interview by the probation officer with the Assistant U. S. Attorney or the case agent was the practice in the district, were the comments made by the probation officer volunteered or responsive to inquiries by the probation officer; and (4) the ultimate issue, whether the Assistant U. S. Attorney or any other member of the United States Attorneys' Office or the case agent or any other member of the investigating agency did indirectly what the Government had promised not to do directly.

 The evidence reveals that it has been the practice in the district for many years, certainly during the five years the probation officer had been working in this district for questions to be asked of the Assistant U. S. Attorney handling the case and also the case agent about the defendant's character and that those comments were sometimes included in the reports. It also reveals that the probation officer takes a series of rough notes and then includes some items but does not feel obliged to include all of them. Both the U. S. Attorney and the case agent testified they did not know their comments would be placed in the presentence report. The Assistant U. S. Attorney expressed surprise that his comments were included in the presentence report. As the agent described it, he didn't consider any effect of the comments because he was answering questions asked by the probation officer.

In fact, the probation officer asked for reports in possession of the case agent, who delivered to the probation officer a five page criminal violation report, report of the interview with the Special Agent for the DEA in Massachusetts, and a copy of the case agent's statement. This also was the typical practice in the Southern District of Florida.

It should be pointed out that the judges of this district unanimously adopted a policy that presentence reports in cases involving plea agreements which provided that the Government make no recommendation regarding sentence should contain any comment made by Government agents, including any statement regarding the sentence. The basic purpose of this policy was to attempt to provide the sentencing judge with all of the information given the probation officer with respect to the sentence itself to let the judge know what had been said to the probationer in case it appeared to influence the confidential recommendation as to the sentence. Also, it was to alleviate any suspicion on the part of a defendant or defense counsel that there was some clandestine report or recommendation given by the Assistant U. S. Attorney or the case agent to the probation officer which somehow influenced the judge.

■ The second question is answered simply: the unanimous testimony is that the probation officer sought out the Assistant U. S. Attorney and the case agent, not the other way around. Likewise, as to the third question the comments were not volunteered by the Assistant United States Attorney or the case agent but were in response to inquiries made by the probation officer.

■ That brings us then to the ultimate issue of fact: Did the Government do indirectly what it had promised not to do directly? It should be kept in mind in considering this issue that although Ms. Avery was sentenced pursuant to a guilty plea that her co-defendant was tried and that she testified before the court. Consequently, the sentencing judge had the great advantage of hearing the evidence in detail and also Ms. Avery's testimony. When the judge has heard evidence at the trial and the person to be sentenced has taken the witness stand, the sentencing report dealing with the details of the particular crime is of much less value to the judge compared to the value of hearing the facts developed at the trial. On the other hand, if a defendant has pleaded guilty and the court has not heard the evidence at the trial, what is contained in the presentence report about the details of the crime is of much greater vitality and importance to the sentencing judge.

An examination of the matters contained in the presentence report about the defendant's character reveal that some of the data is quite properly included: e. g., that she has a pending felony warrant for heroin charges in the State of Massachusetts. As Judge Hill correctly observed in his dissenting opinion an "agreement to *withhold* information from a sentencing judge" would be of dubious legality. Although this particular sentencing judge does not consider pending charges because that could result in a pyramiding of sentences, it is still proper to have this information contained in the presentence report. Whether Ms. Avery was influenced by her boyfriend and co-defendant Carlos Chao is obviously a matter

of opinion and the source of the opinion is properly attributed in the presentence report.

The court concluded at the time of the trial that Ms. Avery was testifying falsely under oath on the witness stand in an effort to assist her boyfriend and co-defendant—a matter that will be discussed in more detail subsequently. The court hardly needed Agent Velasco's opinion that she was a "liar" to reach that conclusion.

Further corroborating the assertion of both the Assistant U. S. Attorney and the case agent that they did not know their comments would be included in the presentence investigation report is the fact that the probation officer inexplicably omitted an extremely damaging fact brought to his attention about defendant Avery: that she had special pockets sewn into her coat enabling her to carry the sawed-off shotgun for whatever purpose she might wish to make of it. Inasmuch as there are no justifiable reasons for anyone to have a sawed-off shotgun, the inclusion of this material in a presentence report would certainly have permitted the logical inference she not only possessed sawed-off shotguns but also had a plan whereby they were to be used in other illegal activities. That material should have been included, in this court's estimation, if the probation officer intended to provide all pertinent data for the sentencing judge. It was not. It is true this information was provided to the probation officer by the case agent. But this, too, is vital information which should be in a presentence report. An agreement to make no recommendation as to sentencing simply cannot be read to preclude the inclusion of information which should have been furnished to the sentencing judge. If this had been included defendant might well have received more than a four-year sentence.

■ This court cannot conclude from the evidence presented and a re-examination of the agreement that the Government has done anything indirectly that it promised not to do directly. Consequently, the court finds that the plea agreement to make no comment at the time of sentencing has not been violated.

## THE FACTORS WHICH WENT INTO THE ACTUAL SENTENCING

Having answered the Court of Appeals' inquiry it seems appropriate for the sentencing judge to set forth in detail what factors led to the sentence imposed upon Ms. Avery. Perhaps they should have been made explicit at the time of sentencing and might have been of some assistance to the Fifth Circuit panel.

■ The nature of the offense, together with the prior record, are the key factors in determining the sentence to be imposed. One major reason this particular sentence was imposed was the nature of the offense: there is no justifiable reason for anyone to have one sawed-off shotgun, let alone two. Also as indicated earlier, the court concluded at the time of the trial of Mr. Chao that Ms. Avery's testimony was false and given with a view towards obtaining the acquittal of her boyfriend and co-defendant Mr. Chao. It clearly is not necessary that the Government bring a successful prosecution for perjury before such a factor can be considered by the sentencing judge. *United States v. Rowen*, 594 F.2d 98 (5th Cir. 1979); *United States v. Nunn*, 525 F.2d 958 (5th Cir. 1976); *United States v. Gamboa*, 543 F.2d 545 (5th Cir. 1976). See also the opinion of former Judge Frankel, sitting as an associate judge in *United States v. Hendrix*, 505 F.2d 1233 (2d Cir. 1974).

■ Anyone who has presided over more than a few trials knows clearly when some witnesses are lying under oath. Obviously there are other times when one cannot be sure. But when the sentencing judge has a positive conviction that the witness is testifying falsely, especially to thwart the ends of justice, it is a matter which can be, and should be, considered by the judge at a subsequent sentencing of that person.

It is not important to this court whether there was any agreement between Ms. Avery and Mr. Chao about her pleading guilty and subsequent testimony. Ms. Avery decided to plead guilty and apparently both expected she would receive a lenient sentence and hoped that her testimony would enable Mr. Chao to be acquitted. All of that occurred except that she did not receive the lenient sentence for which she hoped. That development, of course, stimulated the appeal.

Although the recommendation as to sentencing made by the probation officer is confidential under Rule 32(c), the interests of justice require that the recommendation made to the sentencing judge be disclosed in the instant case. The recommendation made by the probation officer was for a split sentence with six months confinement, but of course the probation officer did not have the advantage of observing Ms. Avery testifying falsely from the witness stand. Consequently, it can be readily seen that the presentence report had no effect upon the sentencing judge whatsoever.

As a result of the hearing held in the instant case pursuant to the order of the Court of Appeals, it is

ORDERED AND ADJUDGED that the sentence previously imposed is valid because the Government did not violate the pre-plea agreement, and the judgment and commitment is hereby re-entered.

DONE AND ORDERED this 5th day of June, 1979.