**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lawrence J. BLOCK,**
**Defendant-Appellant.**

**No. 81–7061.**

United States Court of Appeals,
Fifth Circuit.*

Unit B

Nov. 12, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Robert G. Fierer, Edgar A. Neely, III, Atlanta, Ga., for defendant-appellant.

James E. Fagan, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before VANCE, FRANK M. JOHNSON, Jr., and THOMAS A. CLARK, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Subsequent to certain negotiations with the government's counsel, defendant Lawrence J. Block pled guilty to three counts of wilfully failing to file corporate excise tax returns, in violation of 26 U.S.C.A. § 7203.[1] As part of the plea agreement, the Government agreed not to take a position on the sentence to be imposed. Block contends on appeal that the Government took a position as to the sentence by informing the court

---

1. 26 U.S.C.A. § 7203 states:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

that he had not filed corporate income tax returns for a number of years. Block seeks a new sentence hearing, recusal of the sentencing judge and specific performance of the plea agreement. Because we conclude that the statements made by the prosecutor to the sentencing judge did not amount to taking a position on the sentence, we affirm the sentence imposed below.

Block is the principal owner of Planes, Incorporated, a corporation involved in the sale, rental and charter of planes. Because of the nature of the business, the corporation was required to file both quarterly excise tax returns and ordinary corporate income tax returns.[2] In February 1980, Block was indicted on twenty-four counts of violating federal tax statutes. The indictment included three misdemeanor offenses for wilfully failing to file federal excise tax returns. Twelve of the twenty-four counts were ultimately dismissed because the period of limitations had expired. As to the remaining counts, Block and the Government negotiated an agreement whereby Block would plead guilty to the three misdemeanor counts relating to the failure to file excise tax returns in return for the Government's dismissing the other nine counts. The Government also agreed not to take a position as to the sentence to be imposed but specifically reserved the right to provide information to the probation officers for the presentence investigation report (PSI).[3]

The district court accepted the plea and scheduled a sentence hearing. At the hearing, the court had the benefit of both a PSI and a presentence submission prepared by Block. During the course of the hearing, the district judge questioned Block's attorney about a statement in the presentencing submission indicating that the corporation had collected the excise tax, placed it in a general fund and paid corporate income taxes on the amount.

Q. I have one other specific question for you, [counsel]. I noticed in your submission it was brought out that the funds that were collected for the excise tax by the company were placed in a general fund that was held by the company, and *you stated that the company did pay corporate tax on that money.*

A. *Yes.*

Q. So, then, my question is looking at the dollars, *how much did that diminish the amount of the excise tax?*

A. *Very modestly.* I mentioned it in passing because I thought it was important that what happened is that the disarray of the tax situation was such that when the accountants came in and they were handed all of the documents they needed, they went through some of the invoices, and I thought that was important that they had access to the invoices, and they realized that the invoice documents were perhaps not complete, and so they took their information from checking account deposits and checks, all of the various things as I understand it. Mr. Player [an ac-

**2.** Sections 4261 and 4271 of the Internal Revenue Code of 1954 required companies engaged in the transportation of people and property to pay a federal excise tax. Because Planes, Incorporated operated a nationwide charter service, it had to pay the excise tax. In addition to the excise tax, Section 11 of the Internal Revenue Code of 1954 required corporations to pay a tax on all taxable income. Thus, Planes, Incorporated had an obligation to file both federal excise tax and federal income tax returns.

**3.** The precise terms of the plea agreement as stated by the Government at the sentence hearing were:

In return for the defendant [Block] pleading guilty to Counts 22, 23 and 24 of the indict-

ment against him the Government agrees that it will recommend for dismissal to this Court the other nine counts of the indictment.

Further, the Government agrees that it will take no position as to the sentence to be imposed and leave that to your Honor's discretion with the understanding that we can make our files and our reports and whatnot available to the Probation Department for purposes of their investigation.

The Government also acknowledged that it would not appeal the district court's dismissal of the first twelve counts. However, the parties have all agreed that the decision concerning the appeal was not part of the plea agreement.

countant] is here, and he again did that, and as a result, the 5 and the 8 percent were included in gross deposits and thus were a portion of the figures which were part of the corporate income tax picture. I mention that only for that purpose, but not to indicate in any way that somehow they had approached a parity of any sort. I didn't intend to do that, I hope I didn't leave that misimpression. (Emphasis supplied.)

Thus Block's attorney informed the court that corporate income taxes had been paid on the excise tax receipts and that the corporate income tax had reduced the amount of excise tax "very modestly." Defendant's attorney followed the colloquy with a general plea for leniency, stating that Block was a fine human being, was a supporter of law enforcement and had done a great deal for the community. The prosecutor did not comment on the general plea for leniency but did take issue with the statement that the corporation had paid income tax on the excise tax receipts.

Your Honor, there was one matter that was stated subsequent to my last speaking about the corporate income tax returns and their payment. The records of the IRS reflect that the corporate income tax returns for the years 1972 through 1975 showed losses in all of those years. So, no corporate taxes were, in fact, paid. And then no corporate returns have been filed for the years 1976 through 1979. So, this idea that the federal income taxes were paid in some way and the excise taxes were mixed up therein just isn't so since no corporate taxes were paid for the years in question because every year there was a loss reflected on the returns filed.

Until those statements, no mention of the failure to file corporate income tax returns or the failure to pay corporate income taxes had been made either at the sentence hearing or in the PSI. Block contended that the prosecutor's statements were inaccurate. He stated that corporate income tax returns for the years 1976 through 1979 had been filed and had been filed in a timely fashion. The district court made clear that

the sentence to be imposed would be influenced by whether the corporate income tax returns had in fact been filed.

Gentlemen, I think I will be candid with you. It would make a difference to me in the sentence I might impose as to whether or not those tax returns were filed, and I think that is a matter we should be able to find out for sure what the facts are on that, and I believe the appropriate thing to do is to defer imposition of sentence pending our obtaining further information on that question.

The court scheduled a new sentence hearing and instructed the probation office to ascertain whether the corporate income tax returns had been filed.

At the second sentence hearing, an amendment to the PSI was admitted into evidence over Block's objection. The report indicated that the corporate income tax returns had been filed for the years 1976 through 1979 but that the returns had been filed in February 1980 and were therefore not timely. Further, because the returns showed losses for each year, Block did not actually pay any corporate income tax. Counsel for defendant admitted that the information was true. Thus, contrary to the Government's assertions, the returns had been filed. However, contrary to the assertions of defendant and his counsel, no corporate income taxes had been paid and no corporate income tax returns had been timely filed. Block objected to the report and argued that by raising the issue of the corporate income tax returns the Government had taken a position on the sentence in violation of the plea agreement. Defendant moved (1) for recusal of the trial judge; (2) to have the record sealed; (3) to have a new sentencing judge appointed; (4) to have the original PSI reinstated without the addendum concerning the corporate income tax returns; and (5) to have the plea agreement specifically enforced. The trial judge denied all of the motions and imposed a sentence of six months' incarceration and two years' probation.

A guilty plea predicated upon a promise or agreement by the Government

normally must be fulfilled. *United States v. Shanahan*, 574 F.2d 1228 (5th Cir. 1978); *United States v. Grandinetti*, 564 F.2d 723 (5th Cir. 1977). Where the Government fails to abide by the terms of a plea agreement, a court has the authority to order specific performance of the agreement. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1972); *Petition of Geisser*, 554 F.2d 698, 706 (5th Cir. 1977). We turn now to determine whether the Government violated its promise not to take a position on the sentence by informing the court of defendant's failure to file corporate income tax returns.

A number of cases have concluded that an agreement not to take a position on the sentence or an agreement to stand mute at the sentence hearing prohibits the Government from attempting to influence the sentencing judge. In *United States v. Avery*, 589 F.2d 906 (5th Cir. 1979), the Government agreed to make no recommendation and stand mute at the sentence hearing. Despite the agreement, the prosecutor and the government's investigating agent provided the probation officer with disparaging information about the defendant that later appeared in the PSI. The prosecutor and investigating agent stated that:

> [the Defendant] was not simply an innocent girl that was wrongly influenced by her boyfriend . . . but rather a smart, manipulative woman that's been involved in numerous past illegal activities . . . [The Defendant is] presently a fugitive from Massachusetts, a chronic liar and ex-drug addict . . . . [T]he Defendant was not a novice in terms of criminal involvement;

*Id.* at 907. The Court concluded that a promise to stand mute and make no recommendation "means at the least that the prosecutor will say nothing to the judge

that would influence the sentencing decision." *Id.* at 908. Had the statements in the PSI been made at the sentence hearing, the Court acknowledged that the agreement to stand mute would have been violated. The case was remanded, however, for a determination as to whether the promise to stand mute barred the Government from providing the probation officer with detrimental information concerning the defendant.[4]

In *United States v. Crusco*, 536 F.2d 21 (3d Cir. 1976), the Government agreed not to take a position as to the sentence in return for the defendant's pleading guilty to one count of a drug related offense. At the sentence hearing, counsel for the defendant made a "paradigmatic argument for leniency in sentence," citing as grounds for a reduced sentence the defendant's family situation, his integrity and honor and the fact that he was not a "heavy weight . . . in a position to deal in large quantities of drugs." *Id.* at 25. The prosecutor challenged the statements by noting that the defendant was involved in organized crime and was a danger to the community. The Third Circuit determined that a promise not to take a position precluded the Government from attempting to influence the severity of the sentence. By responding to the defendant's "hyperbole" with information already known to the court, the court concluded that the prosecutor had in fact attempted to influence the severity of the sentence. "Only a stubbornly literal mind would refuse to regard the Government's commentary as communicating a position on sentencing." *Id.* at 26. The case was remanded with instructions to permit the defendant to withdraw the guilty plea.[5]

■ *Avery* and *Crusco* both affirm that an agreement to stand mute or to take no

---

4. On remand, the district court concluded that the promise to stand mute did not prohibit the Government from providing the probation department with information on the defendant's background and character. 473 F.Supp. 980 (S.D.Fla.1980). The decision was affirmed on appeal. 621 F.2d 214 (5th Cir. 1980).

5. In a subsequent case, the Third Circuit held that an agreement to make no *recommendation*

as to the sentence prohibits the Government from suggesting to the court a specific sentence. However, unlike an agreement not to take a position, the Government retained the right to influence the severity of the sentence. *United States v. Miller*, 565 F.2d 1273 (3d Cir. 1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978). We express no position on this distinction.

position on the sentence restricts the Government's right to make certain types of statements to the court. However, neither case stands for the broad proposition that by making such agreements the Government forfeits all right to participate in either the presentence investigation or the sentence hearing. Instead the cases simply hold that an agreement to stand mute or take no position prohibits the Government from attempting to influence the sentence by presenting the court with conjecture, opinion, or disparaging information already in the court's possession. Efforts by the Government to provide relevant factual information or to correct misstatements are not tantamount to taking a position on the sentence and will not violate the plea agreement. *See United States v. Johnson*, 582 F.2d 335 (5th Cir.), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 732, 58 L.Ed.2d 711 (1978) (agreement not to make a recommendation as to the sentence not violated when Government corrected defendant's misstatements concerning availability of psychiatric care); *United States v. Garcia*, 544 F.2d 681 (3d Cir. 1976) (agreement to

take no position on the sentence not violated where Government provided factual information in response to a question from the court).

 A prosecutor has a duty to insure that the court has complete and accurate information concerning the defendant, thereby enabling the court to impose an appropriate sentence.[6] Thus if an attorney for the Government is aware that the court lacks certain relevant factual information or that the court is laboring under mistaken premises, the attorney, as a prosecutor and officer of the court, *see Smith v. United States*, 375 F.2d 243, 247 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967); *United States v. Cox*, 342 F.2d 167, 171 (5th Cir.), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965), has the duty to bring the correct state of affairs to the attention of the court.[7] Quite aside from that duty, a prosecutor, if permitted by the sentencing judge, may recommend a particular sentence based upon the facts before the court.[8] As part of a plea agreement, the Government is free to negotiate away any right it may have to recom-

---

6. For example, the ABA Standards for Criminal Justice § 3- 6.2 (1980) states:

(a) The prosecutor should assist the court in basing its sentence on complete and accurate information for use in the presentence report. The prosecutor should disclose to the court any information in the prosecutor's files relevant to the sentence. If incompleteness or inaccurateness in the presentence report comes to the prosecutor's attention, the prosecutor should take steps to present the complete and correct information to the court and to defense counsel.

(b) The prosecutor should disclose to the defense and to the court at or prior to the sentencing proceeding all information in the prosecutor's files which is relevant to the sentencing issue.

The Comment to the section provides a poignant explanation of the prosecutor's important role at sentencing.

One of the most important contributions the prosecutor can make in the sentencing process is to see that the information that the prosecutor has gathered for use at trial is brought to bear on the issue of sentence to the extent relevant, whether that information is favorable or unfavorable to the convicted defendant. Unless the sentencing judge directs otherwise, the prosecutor should forward relevant information to the officer re-

sponsible for preparation of the presentence report. It is also desirable that the prosecutor have access to the report, or a summary, after it is prepared in order to check on its completeness and accuracy in light of the prosecutor's information.

7. Federal courts are required to consider all information concerning a defendant's background, character and conduct when imposing a sentence. 18 U.S.C.A. § 3577. Accordingly, the prosecutor, as an officer of the court, has a duty to assist the court in effectuating this statutory requirement. Thus, any time a prosecutor is aware that the court is about to impose sentence based upon incomplete or inaccurate information, the prosecutor has the duty to inform the court of the correct or missing information.

8. *E. g.*, ABA Standards for Criminal Justice § 3–6.1 (1980) states in relevant part:

(b) Where sentence is fixed by the court without jury participation, the prosecutor should be afforded the opportunity to address the court at sentencing and to offer a sentencing recommendation. When requested by the court to furnish a sentencing recommendation, the prosecutor should have the obligation to do so.

mend a sentence.[9] However, the Government does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court. Such an agreement not only violates a prosecutor's duty to the court but would result in sentences based upon incomplete facts or factual inaccuracies, a notion that is simply abhorrent to our legal system.[10]

We recognize that plea bargaining, for better or worse, is an integral and indispensable part of our legal system. However, we are equally cognizant that there are limits to what the Government can promise in return for a guilty plea. The practice of agreeing to stand mute in the face of misstatements or of agreeing to withhold relevant factual information from the court exceeds those limits. We condemn such a practice and now place the Government on notice that under no circumstances will such an agreement be tolerated by this Court.

 Turning to the facts of the instant case, the Government agreed not to take a position on the sentence. As the previous discussion indicates, the agreement does not normally bar the Government either from providing the court with relevant factual information or from correcting misstatements. Further, Block admits on brief that the agreement simply prohibits the Government from taking its otherwise nor-

mal adversary position at sentencing, but does not prevent the Government from correcting false statements made by defendant or defendant's counsel. At the sentence hearing, Block's attorney was asked by the sentencing judge whether the excise tax receipts had been included in the corporation's gross income and corporate income taxes paid on the amount. After receiving an affirmative response, the district court judge asked how much the corporate income taxes reduced the excise tax. Counsel for defendant informed the court that the income tax reduced the excise tax "very modestly." Subsequently, defendant stated that corporate income tax returns had been filed and that the returns were timely. The truth, however, was that the corporation never reported taxable income and never paid any corporate income tax. Thus corporate income taxes did not reduce the amount of the excise tax even "modestly." Moreover, contrary to defendant's testimony, the returns were not filed in a timely fashion. The corporate returns for the years 1976 through 1979 were not filed until February 1980. By informing the court that the returns had not been filed and that no taxes had been paid, the Government was simply correcting the misstatements and not taking a position on the sentence. Even were we to agree with defendant's curious assertion that no misstatement had occurred,[11] the Government would still have

9. *E. g.*, ABA Standards for Criminal Justice § 14 -3.1 (1980) states in relevant part:

 (b) The prosecuting attorney, in reaching a plea agreement, may agree to one or more of the following, as dictated by the circumstances of the individual case:

 (i) to make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or nolo contendere;

*See also Santobello v. New York, supra*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427.

10. Sentences based upon erroneous information violate due process. *United States v. Espinoza*, 481 F.2d 553, 555 (5th Cir. 1973). *See also United States v. Vasquez*, 638 F.2d 507 (2nd Cir. 1980) ("A sentence within the statutory maximum is reviewable if the possibility exists that it was based on . . . false information.").

11. In a somewhat astonishing *tour de force*, defendant attempts to strengthen his argument by contending that no misstatement occurred until after the Government injected the issue of the corporate income tax returns into the sentence hearing. Block states that the absence of a misstatement can be objectively shown by the lack of confusion on the part of the court and the failure of the prosecutor to refer to the misstatement when discussing the corporate tax returns. The argument is frivolous. We simply note that a plain reading of the record affords only one interpretation: that, prior to any statements made by the Government concerning the corporate income tax returns, counsel for defendant misstated that corporate income taxes had been paid and that the taxes had modestly reduced the amount of the excise tax receipts.

been obligated to disclose defendant's failure to file the returns in order to enable the court to determine an appropriate sentence and would not have violated the plea agreement by doing so.

Defendant argues that since the misstatement involved an inconsequential fact the Government's response was not justified. Our reading of the record demonstrates that the Government's statements were nothing more than a cogent rebuttal of the contention that corporate income taxes had been paid, thereby reducing the excise tax receipts. The Government did not utter invectives or give opinions. The prosecutor simply made clear that corporate income taxes had not been paid. Thus we conclude that the statements were not excessive or unjustified. Further, we are unable to agree with the assessment that the defendant's misstatements were inconsequential. The misstatements indicated that Block was less culpable for failing to pay the excise tax because he had been including the excise tax receipts in gross income and paying federal income taxes on the amount. The Government had the right to dispel this misimpression.

Because the Government did not violate the agreement not to take a position on the sentence when it corrected factual misstatements concerning defendant's payment of corporate income taxes, the decision of the lower court is in all respects

AFFIRMED.