OPINION
{¶ 1} Appellant, Macie A. Crump ("Crump"), appeals the sentence imposed by the Common Pleas Court of Logan County on June 14, 2004.
 {¶ 2} Having vacated the previously issued opinion in this case, Statev. Crump, 3rd Dist. No. 8-04-24, 2005-Ohio-1089, we issue the following opinion upon the record as supplemented. We find that the issue of restitution raised by this Court, sua sponte, is no longer presented in this appeal.
 {¶ 3} On November 20, 2002, Crump waived prosecution by indictment and proceeded by way of a bill of information charging him with three counts of theft from the elderly in violation of R.C. 2913.02, felonies of the fourth degree; one count of misuse of credit cards in violation of R.C.2913.21(B)(2), a felony of the third degree; and one count of passing bad checks in violation of R.C. 2913.11(A), a misdemeanor of the first degree. Crump was placed on the pre-trial diversion program and all matters were stayed in the case pending his completion of the program.
 {¶ 4} The State filed a motion with the court on January 9, 2004 to reactivate the prosecution due to Crump's failure to comply with the terms and conditions of the pre-trial diversion program. On April 12, 2004, Crump pled guilty to one count of theft from the elderly in exchange for the prosecutor's agreement to move for dismissal of the remaining counts and to not oppose a sentence of community control.
 {¶ 5} A sentencing hearing was held on June 1, 2004. At the hearing, Crump's counsel urged the court to impose a community control sanction in lieu of a prison term and gave an explanation for Crump's failure to complete the diversion program. The prosecutor corrected counsel's explanation for Crump's failure to successfully complete the diversion program. The court sentenced Crump to six months in prison and ordered him to pay restitution in the amount of $17,634.85 to Betty Crump, and $615.00 to First Check Cash Advance. It is from this order that Crump now appeals asserting the following two assignments of error.
The prosecutor breached the terms of the plea bargain that he enteredinto with the appellant.
 The trial court's imposition of a term of imprisonment was contrary tolaw.
 {¶ 6} In his first assignment of error, Crump argues that the prosecution breached the terms of the plea bargain when the prosecutor commented on Crump's failure to complete the diversion program at the sentencing hearing. Crump argues that the prosecutor's comment resulted in the trial court imposing a prison term upon Crump. Crump characterized the plea agreement between him and the prosecution as follows: "The State agrees to dismiss the remaining counts in the indictment in exchange for my guilty plea to one count of Theft as a felony of the fourth degree. The State also agrees that it will not oppose a community control sentence in this case." April 12, 2004, Petition to Enter a Plea of Guilty or No Contest, ¶ 11.
 {¶ 7} Counsel for Crump stated the following to the court at the sentencing hearing:
Your Honor, this is the first felony — this first felony four case isthe first conviction for Mr. Crump. He's never served a prison sentencepreviously. The case began with a diversion referral by the State, whichfailed primarily because — as a result of Mr. Crump's circumstances.
June 1, 2004 Sentencing Proceedings, Tr. 3. Counsel later stated:
I note that the State has indicated it is not opposed to communitycontrol, mainly for the reason that I outlined initially regarding thelength of time needed to work out restitution, and we ask that the Courtaccept this defect and joint recommendation that there be communitycontrol in this case.
Tr. 4.
 {¶ 8} In response to the statements made to the court by counsel for Crump, the prosecutor stated:
One, I have a concern with regard to the indication as to why Mr. Crumpwas removed from diversion. He was removed from diversion because he liedto the diversion officer on several occasions, primary one of which waswhen he said that he had sought employment and presented an employmentemployer contact sheet to the diversion officer that was totally madeup.
 When the diversion officer contacted the ten employers on the sheet,not one of them had seen Mr. Crump. I correct that. One of them had. Hehad picked up an employment application and said the only reason he waspicking it up was to stay out of jail. That's the reason that he is off ofdiversion.
Tr. 4-5. The prosecution did not comment further regarding Crump's involvement in the diversion program or with regard to a recommendation for Crump's sentence.
 {¶ 9} Crump argues that while the prosecutor did not expressly oppose a community control sentence, his factual argument regarding Crump's failure to complete the diversion program was the equivalent of opposing such a sentence. Crump also argues that the trial court cited to the prosecutor's argument when it imposed the sentence of a prison term stating: "[y]our prior failure of diversion indicates you're not going to be a good candidate for community control." Tr. 8.
 {¶ 10} When a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."Santobello v. New York (1971), 404 U.S. 257, 262, 92 S.Ct. 495,30 L.Ed.2d 427. If the prosecution fails to abide by the terms of the plea agreement, the defendant may be entitled to specific performance of the agreement or to withdraw his guilty plea.
 {¶ 11} In determining whether the prosecution breached the plea agreement by informing the court of the reason for which Crump was dismissed from the diversion program, we are provided guidance by the Fifth Circuit's opinion in United States v. Block (C.A.5, 1981),660 F.2d 1086. In that case, appellant argued that the Government violated its promise not to take a position on the sentence by informing the court of appellant's failure to file corporate income tax returns after appellant had relayed to the court that such returns were filed and done so timely. Id. In holding that the Government had not violated the plea agreement, the court explained:
Avery[1] and Crusco[2] both affirm that an agreement to stand muteor to take no position on the sentence restricts the Government's rightto make certain types of statements to the court. However, neither casestands for the broad proposition that by making such agreements theGovernment forfeits all right to participate in either the presentenceinvestigation or the sentence hearing. Instead the cases simply hold thatan agreement to stand mute or take no position prohibits the Governmentfrom attempting to influence the sentence by presenting the court withconjecture, opinion, or disparaging information already in the court'spossession. Efforts by the Government to provide relevant factualinformation or to correct misstatements are not tantamount to taking aposition on the sentence and will not violate the plea agreement.
* * *
As part of a plea agreement, the Government is free to negotiate awayany right it may have to recommend a sentence. However, the Governmentdoes not have a right to make an agreement to stand mute in the face offactual inaccuracies or to withhold relevant factual information from thecourt. Such an agreement not only violates a prosecutor's duty to thecourt but would result in sentences based upon incomplete facts orfactual inaccuracies, a notion that is simply abhorrent to our legalsystem.
Id. at 1091-1092.
 {¶ 12} Turning to the facts of the instant case, the prosecutor agreed not to oppose the sentence of community control. As the discussion above indicates, the agreement not to oppose community control does not bar the prosecutor from providing the court with relevant factual information or from correcting misstatements from the defendant or his counsel. Id. at 1092. At the sentencing hearing, counsel for Crump stated to the court that Crump failed the diversion program primarily as a result of Crump's circumstances. Counsel further explained that Crump had health problems that were primarily the result of diabetes and included the possible amputation of his leg. Counsel implied that these circumstances were the reason for Crump's failure in the diversion program. However, Crump's health problems were not the cause of his dismissal from the diversion program. As the prosecutor pointed out to the court, Crump was dismissed from the program for lying to the diversion officer on several occasions with regard to his efforts to obtain employment. By informing the court that Crump's repeated lying was the reason for his dismissal from the program, the prosecutor was simply correcting the misstatements of Crump's counsel and was not taking a position on the sentence. Therefore, the prosecutor did not breach the plea agreement and Crump's first assignment of error is overruled.
 {¶ 13} In his second assignment of error, Crump argues that the trial court was precluded from making the findings under R.C. 2929.12 and R.C.2929.13(B)(1) by the Sixth and Fourteenth Amendments to the United States Constitution. Additionally, Crump argues that even if the trial court had the authority to make the findings, the court misapplied the statutory factor that Crump was in a position of trust.
 {¶ 14} Crump begins by arguing that the trial court could not impose a sentence of imprisonment upon him where the facts necessary for the imposition of the sentence had not been admitted by Crump and had not been found by a jury beyond a reasonable doubt. Crump bases this argument on the United States Supreme Court's recent decision of Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. InBlakely, the Court applied the rule of Apprendi v. New Jersey (2000),530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Court noted that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdictor admitted by the defendant." Blakely, 124 S.Ct. at 2537, citing Ring v.Arizona (2002), 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556.
 {¶ 15} R.C. 2929.13 provides sentencing guidance to the trial court by degree of felony. Crump pled guilty to a felony of the fourth degree which has a statutory sentencing range of six to eighteen months, with a presumption in favor of community control sanctions. R.C. 2929.13 (B)(1) provides that in sentencing an offender for a felony of the fourth degree, the sentencing court should determine whether any of the nine factors enumerated in the section apply. The trial court determined that one of these factors applied in Crump's case: that Crump held a position of trust with his grandmother and the offense was related to that position. R.C. 2929.13(B)(1)(d). R.C. 2929.13(B)(2)(a) further provides that:
If the court makes a finding described in division (B)(1)(a), (b),(c), (d), (e), (f), (g), (h), or (i) of this section and if the court,after considering the factors set forth in section 2929.12 of the RevisedCode, finds that a prison term is consistent with the purposes andprinciples of sentencing set forth in section 2929.11 of the Revised Codeand finds that the offender is not amenable to an available communitycontrol sanction, the court shall impose a prison term upon theoffender.
 {¶ 16} Crump argues that the requirement that the trial court make findings with regard to a factor listed in R.C. 2929.13(B)(1), that a prison term is consistent with the purposes and principles of sentencing, and that Crump is not amenable to a community control sanction violates the holding of Blakely. Crump argues that the statutory maximum sentence for felonies of the fourth degree is a sentence of community control sanctions since the trial court is required to make additional factual findings to increase the penalty beyond a sentence of community control sanctions.
 {¶ 17} In State v. Trubee, 3d Dist. No. 9-03-65, 2005-Ohio-552, at ¶ 23, this Court held that the Blakely decision had the impact of "limit[ing] a defendant's potential sentence within the statutory range
created by R.C. 2929.14(A)." This Court stated that R.C. 2929.14(A) sets a sentencing range for each degree of a felony and that R.C. 2929.14(B) requires the court to make a specific finding before sentencing the defendant above the lowest term in the range. Id. at ¶ 26. In considering the Blakely decision, the Apprendi decision and its progeny, as well as the recent Supreme Court case of United States v. Booker
(2004), 125 S.Ct. 738, this Court reasoned:
In reality, all R.C. 2929.14(B) does is mandate a minimum sentenceunless the trial court determines that the offender deserves a higherprison sentence within the range permissible for that crime. It thenlimits the ways the court can determine that the higher punishment isnecessary. In this way, R.C. 2929.14 creates an indefinite sentencingscheme, but limits judicial discretion within that scheme. It does not,however, allow judicial discretion to interfere with the province ofpower reserved to the jury. Put another way, it does not allow the judgeto usurp the jury's power by engaging in any factual determinations thatset the available range of sentences apart from the range alreadyprovided in the statute.
Id. at ¶ 36.
 {¶ 18} Like R.C. 2929.14, R.C. 2929.13 also provides sentencing guidance to the trial court by degree of felony. The presumption for sentencing a defendant convicted of a felony of the fourth degree is community control sanctions. R.C. 2929.13(B)(2)(a) provides that if the court makes the determination that a factor listed in subsection (B)(1) applies in the particular case, the court should impose a prison term instead of community control sanctions. Therefore, R.C. 2929.14 creates an indefinite sentencing scheme and R.C. 2929.13 limits judicial discretion within that scheme. Therefore, we conclude that the "statutory maximum" under R.C. 2929.14 is still the highest prison term permitted by section (A) and that the additional considerations of R.C. 2929.13 do not change the "statutory maximum" under the Blakely-Apprendi definition.
 {¶ 19} In the case sub judice, Crump waived an indictment and pled guilty to count one of the bill of information, which provided:
Between the dates of August 1, 2001, and March 5, 2002, at the Countyof Logan aforesaid, Macie Crump did, with purpose to deprive the owner ofproperty or services, knowingly obtain or exert control over eitherproperty or services beyond the scope of the express or implied consent ofthe owner or person authorized to give consent, to wit; kept money thatwas given to him by his grandmother to pay for the following utilitybills and did not pay for the bills: DPL, Vectren, and Culligan, inviolation of Ohio Revised Code Section 2913.02, Theft from an elderlyperson, a felony of the fourth degree in that the victim of the offense isan elderly person and the value of the property or services stolen isfive hundred dollars or more.
 {¶ 20} Having agreed to the facts and prosecution on the charge, Crump agreed to the facts necessary for his conviction of a fourth degree felony.
 {¶ 21} In addition, Crump agreed to the R.C. 2929.13(B)(1)(d) statutory factor of being in a position of trust and using such trust in committing the theft. Not only did the bill of information provide that Crump had committed theft against his elderly grandmother, but Crump also indicated that he occupied a position of trust with his grandmother at the sentencing hearing when he stated: "But I'm very sorry for what I did, and, actually I — I took my grandmother's trust because she did trust me, and that's what I misused and that I feel very badly for that." June 1, 2004 Sentencing Proceedings, Tr. 6. While Crump argues that the trial court improperly defined the term "position of trust" by not limiting the application only to public officials and servants, this Court, as well as courts in other districts, has determined that the term includes both public and non-public positions. See State v. Cooper,
Marion App. No. 9-2000-49, 2000-Ohio-1803 (holding that the president of a health insurance company holds a position of trust with his clients);State v. Johnson, Crawford App. Nos. 3-2000-15, 3-2000-16, 2000-Ohio-1934 (holding a college student holds a position of trust with the university he attends); State v. Hall (2000), 137 Ohio App.3d 666, 739 N.E.2d 846
(holding a parent holds position of trust with her child).
 {¶ 22} Therefore, Crump admitted the facts necessary for the trial court's determination of his guilt of a fourth degree felony charge and sentencing under R.C. 2929.13(B)(1) and 2929.14. In determining that Crump was not amenable to community control sanctions, the trial court properly considered the record of the case which provided that Crump had not successfully completed the diversion program or paid any restitution to his grandmother. The trial court also properly considered Crump's prior misdemeanor convictions. See Trubee, 2005-Ohio-552, at ¶ 45. Thus, the trial court's imposition of a term of six months imprisonment was proper in this case. Accordingly, Crump's second assignment of error is overruled.
 {¶ 23} Having found no error prejudicial to the appellant, the judgment of the Common Pleas Court of Logan County is affirmed.
Judgment Affirmed.
 Cupp, P.J., concurs.
[1] United States v. Avery (C.A.5, 1979), 589 F.2d 906, 908 (holding that a promise to stand mute and make no recommendation "means at the least that the prosecutor will say nothing to the judge that would influence the sentencing decision.").
[2] United States v. Crusco (C.A.3, 1976), 536 F.2d 21 (holding that Government's promise not to take a position at the hearing as to the sentence precluded the Government from attempting to influence the severity of the sentence by challenging a statement made by defense counsel and pointing out to the court disparaging facts regarding defendant that were in the record before the court).