# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 00-2397

————————

| | | |
|---|---|---|
| Bryan Scott May, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Southern District of Iowa |
| | * | |
| State of Iowa, | * | [TO BE PUBLISHED] |
| | * | |
| Appellee. | * | |

————————

Submitted: April 13, 2001

Filed: May 16, 2001

————————

Before BYE and BEAM, Circuit Judges, and NANGLE,[1] District Judge.

————————

BYE, Circuit Judge.

An Iowa jury convicted Bryan May of sexually abusing his 6-year-old son. After appealing his conviction through all levels of review in the Iowa courts, May sought a writ of habeas corpus in federal court. The district court[2] denied a writ, and we affirm.

———————————————————————

[1]The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

I

A

The State charged May with second-degree sexual abuse of his son stemming from an incident in December 1991. May's son testified at trial and was the key witness for the prosecution. The son stated that May had made a "bad touch" to his "privates." Specifically, May had put something "hard" in his "bottom," and the hard thing had hurt him. The son also stated that he felt a "drip" on him after the touching. The son later told his mother that he had been playing the "butt crack game" with May.

On cross-examination, the son distinguished between his "bottom" and "the hole that your poop comes out of." The son also acknowledged that he had never had anything "stuck" in that orifice. May's lawyer argued that the son's testimony was inherently contradictory under Iowa's definition of "sex act."

May's wife, Dorene, testified that she returned home late one evening to find her son crying. Her son complained that his butt hurt and itched. Dorene discovered that her son's anus was red, swollen and torn. Her son stated that May hurt him while doing "nasties" with him.

May's son was examined by Dr. Linda Ozaki, a pediatrician with experience in detecting cases of sex abuse. Dr. Ozaki opined at trial that the son's anal injuries were consistent with either attempted or completed anal penetration. Dr. Ozaki also explained that the son's injuries could not have been self-inflicted.

May testified in his defense. He acknowledged that he frequently tickled the top of his son's "butt crack" in a teasing manner when his son went shirtless and wore his pants loosely. But May denied abusing his son.

May was convicted of second-degree sexual abuse after a short trial. The Iowa Court of Appeals affirmed the jury verdict, and the Iowa Supreme Court declined to review May's case.

B

In April 1994, May sought post-conviction relief in Iowa state court. May attacked the sufficiency of the evidence to support his guilt on the ground that trial witnesses gave conflicting testimony about the date of his alleged abuse. The range of witness testimony at trial implicated various dates and times between December 13 and December 15, 1991. May also alleged that his trial lawyer had rendered ineffective assistance of counsel in several respects.

May introduced the testimony of a purported alibi witnesses, Kevin Erbst, at an evidentiary hearing. Erbst was a friend of May who might have provided an alibi for certain periods of time on or around December 14. But there is some evidence in the record that Erbst was highly intoxicated at that time. Erbst apparently could have provided a "sober" alibi for May on December 11 and 12, though the prosecution introduced no evidence that May's son was sexually abused on those two days.

May also procured the expert medical testimony of Dr. Shaku Teas. Dr. Teas roundly criticized Dr. Ozaki's examination of the son for failure to perform certain procedures. Dr. Teas opined that the son's anal injuries could have been self-inflicted, though he could not rule out sexual abuse as the cause. Dr. Teas never met nor examined the son, and he grounded his conclusions exclusively on photographs and written reports.

The state post-conviction court ruled against May. The court held that the evidence presented at trial was constitutionally sufficient to convict him. The court also rejected May's multiple claims of ineffective assistance of counsel. The court found

that May's lawyer had made reasonable strategic choices in electing not to call an intoxicated alibi witness, and in conferring with May before agreeing not to call an expert (such as Dr. Teas) to rebut Dr. Ozaki's medical testimony.

The Iowa Court of Appeals affirmed the denial of post-conviction relief on different grounds. The Court of Appeals ruled that May had procedurally defaulted his ineffective assistance of trial counsel claims by failing to raise them on direct appeal from his conviction. The Court of Appeals made no reference to May's sufficiency-of-the-evidence claim (apparently affirming that ruling *sub silentio*). The Iowa Supreme Court again declined to review May's case.

C

May petitioned for a writ of habeas corpus in late December 1997. May's petition raised four claims of federal constitutional error in the underlying conviction:

- Insufficiency of the evidence;
- Ineffective assistance of trial counsel for failure to investigate whether expert medical testimony would assist May's defense;
- Ineffective assistance of trial counsel for failure to call certain alibi witnesses at trial; and
- Ineffective assistance of trial counsel for failing to cross-examine Dorene May.

The district court expressed reservations about the strength of the evidence of May's guilt. The court nevertheless denied a writ because it found that the Iowa courts' review of May's conviction was reasonable. The court entered judgment adverse to May, but granted him a certificate of appealability on each of the four issues he had raised.

II

We may not reverse the district court's decision to deny May a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We must deny a writ—even if we disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances. Williams v. Taylor, 529 U.S. 362, 409-13 (2000) (O'Connor, J., writing for the majority).

A

We find that the evidence adduced at May's trial was constitutionally sufficient to convict him of second-degree sexual abuse of his son. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (citation omitted) (italics in original).

Under Iowa law, the crime of second-degree sexual abuse includes sexual contact between the finger or hand of an adult and the genitalia or anus of a child. See Iowa Code §§ 702.17, 709.1(3), 709.3(2). May's son testified in fairly graphic detail that May had touched his "butt crack." Dorene May stated that the son complained of May's hurtful touching—"nasties" in his "privates." And Dr. Ozaki opined that the son's torn, swollen anus was consistent with evidence of unwanted sexual touching. May himself testified about tickling his son's "butt crack," and the jury could reasonably have interpreted these statements against May's interests.

May contends that his son's testimony was internally inconsistent. The son testified on direct examination that May had inserted something "hard" into his

"bottom." But on cross-examination, the son stated that nothing had ever been placed into "the hole that your poop comes out of." Having reviewed the trial transcript, we are not convinced that the son's testimony was necessarily inconsistent. In any event, we are dubious of May's claim that his son's testimony would have been discredited by a reasonable jury because

> the child may lack the technical knowledge to accurately describe parts of his or her body. Where the child has sufficiently communicated to the trier of fact that the touching occurred to a part of the body within the definition of [the statute], the evidence will be sufficient to support a conviction regardless of the unsophisticated language that the child uses.

State v. Martens, 569 N.W.2d 482, 487 (Iowa 1997) (quoting Clark v. State, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977)).

Even if the son's testimony about penetration was thoroughly impeached, however, the jury could still have found May guilty of second-degree sexual abuse. Digital or genital *contact* with a child's anus establishes guilt under Iowa law. The State did not have to prove penetration. Thus, May's impeachment of his son's testimony regarding penetration is insufficient to create reasonable doubt.

May also argues that the prosecution failed to establish the precise time at which the sexual abuse occurred. In a recent sex abuse case, the Iowa Supreme Court rejected "the defendant's argument that the confusion among the witnesses as to when this incident occurred fatally undermines the jury's finding of guilt." State v. Laffey, 600 N.W.2d 57, 60 (Iowa 1999) (collecting Iowa cases). Because the timing of the offense is not an element of the crime of sexual abuse under Iowa law, May derives no benefit from possible confusion among the witnesses as to the time when he abused his son.

We believe that the evidence of May's guilt is constitutionally sufficient. Even if we entertained doubts about the conviction, as the district court apparently did, the Iowa courts' decisions were certainly reasonable. See Williams, 529 U.S. at 409-13.

B

May procedurally defaulted his ineffective assistance of trial counsel claims by failing to raise them on direct appeal from his conviction. As a threshold matter, May contests his default. He claims that the Iowa Court of Appeals should not have found his ineffectiveness claims defaulted because his appellate lawyer should not be charged with the duty to uncover hidden trial errors that were not apparent on the face of the record. This argument attacks the Iowa rule that a defendant must demonstrate a "sufficient reason" for failing to raise a claim on direct appeal. Polly v. State, 355 N.W.2d 849, 856-57 (Iowa 1984). The Iowa Court of Appeals rejected May's argument, finding—as a matter of Iowa law—that May had "failed to advance a sufficient reason why his claims were not raised on direct appeal." JA 14. We may not disturb a state court decision interpreting state law on habeas review, Wainwright v. Sykes, 433 U.S. 72, 81-88 (1977), and thus we reject May's contention that he did not default his three ineffective assistance of counsel claims.

In the present appeal, May has selected only one of the varied paths to excuse his default in state court. He contends that the Iowa procedural rule requiring ineffective assistance of counsel claims to be raised on direct appeal is neither firmly established, nor regularly followed. See Ford v. Georgia, 498 U.S. 411, 423-24 (1991). We disagree.

Under Iowa law, a defendant must raise claims of ineffective assistance of trial counsel as part of his direct appeal. A defendant may not wait to raise such claims until a subsequent post-conviction proceeding. Berryhill v. State, 603 N.W.2d 243, 245 (Iowa 1999); Collins v. State, 477 N.W.2d 374, 376-77 (Iowa 1991); Washington v.

-7-

<u>Scurr</u>, 304 N.W.2d 231, 235 (Iowa 1981).  The Iowa Supreme Court has recognized just two exceptions to this general rule.  The first exception involves ineffective assistance of appellate counsel, which prevents the defendant from properly raising his claim on direct appeal.  <u>See</u> <u>Jones v. State</u>, 479 N.W.2d 265, 271 (Iowa 1991).  The second exception pertains when a defendant must develop a new evidentiary record during post-conviction proceedings because the facts giving rise to his claim were unknown at the time of his direct appeal.  <u>See</u> <u>Washington</u>, 304 N.W.2d at 235.  Our review of myriad Iowa Supreme Court decisions persuades us that the Iowa courts have firmly established these principles, and regularly apply them.  May cannot overcome his procedural default, and we therefore decline to address the merits of his three ineffective assistance of counsel claims.

III

We affirm the judgment of the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.