# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1326
_____

| | | |
|---|---|---|
| Douglas Colvin, | * | |
| | * | |
| Petitioner - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Lynda Taylor, | * | |
| | * | |
| Respondent - Appellant. | * | |

_____

Submitted:  September 9, 2002

Filed: April 2, 2003
_____

Before WOLLMAN, HEANEY, and BYE, Circuit Judges.
_____

BYE, Circuit Judge.

In the Circuit Court of Randolph County, Missouri, petitioner Douglas E. Colvin pleaded guilty to two counts of distributing a controlled substance and one count of keeping or maintaining a public nuisance.  He was sentenced to imprisonment.  After exhausting his state remedies, Colvin submitted a habeas petition under 28 U.S.C. § 2254, claiming his plea agreement with the State of Missouri had been violated. The district court granted the petition. The State appeals the grant of habeas relief, asserting the plea agreement was not breached.  We do not

believe the holding of the Missouri courts was unreasonable; therefore, we reverse the judgment below.

I

Colvin's plea agreement included a promise from the prosecutor to "stand silent upon" Colvin's request to be sentenced to an institutional treatment center for 120 days followed by probation, pursuant to Mo. Rev. Stat. § 559.115. At sentencing, while discussing Colvin's pre-sentence investigation report, defense counsel stated that Colvin had "matured" since 1984, when he was convicted of another crime, and that he had used his time in prison for that conviction to better himself. The prosecutor in turn stated:

> Your Honor, I've agreed to stand silent today, but I was listening while we were arguing about the [pre-sentence investigation report]. And I do have a bit of a problem with some of the remarks [that] were made. Which is that the defendant has matured a lot in his thirteen years at the Department of Corrections, and made good use of his time, and has been able to succeed without being a danger to society.
>
> Within a matter of – I mean this guy just got out of prison. And, right after he got out of prison, he engaged in a drug operation which involved, in part, 801 West Coates, but also involved other activities that were going on. There are complete connections between him and other members of the St. Louis area.
>
> When this whole program of selling started, through January and April, and we started making our buys, Mr. Colvin immediately jumped into the fray, and started dealing drugs right away. Even the day that he was picked up on this offense, he made a buy – or he made a sale to our confidential informant before they tapped him that day. We even recovered the buy money off of him.

I don't think it can be said that he matured a lot, or made the most of his time. The only thing I'd add to that is the fact that apparently he didn't take his treatment program too seriously. On one of the last pages there, it says he completed out-patient treatment, a special condition of this parole, at Archways Comminutes, Inc., in 1994. But by his own admission, he continued to use drugs.

. . .

[H]e wasn't out [of prison for the first-degree robbery] any time before the buys were being made in this case.

And I think that is a relevant factor for the Court to consider, in light of the comments defense counsel makes about his rehabilitation.

The Missouri trial court sentenced Colvin to eight years imprisonment on the distribution counts, and to a consecutive term of five years imprisonment on the nuisance count. Colvin filed a motion under Missouri Supreme Court Rule 24.035, seeking to withdraw his guilty plea on the ground that the State had violated its plea agreement to stand silent at sentencing with regard to Colvin's request for probation. Following an evidentiary hearing, the trial court concluded the remarks by the prosecutor at sentencing "were fair comments upon what defense counsel had stated." The trial court further observed the State "had a duty to the Court to rebut inferences drawn by defense counsel." The court also noted "the prosecutor did not suggest a particular sentence, nor did he voice opposition to probation." The Missouri court thus concluded the State did not violate its agreement to stand silent on the probation request, and denied Colvin's motion for post-conviction relief.

The Missouri Court of Appeals affirmed the denial of post-conviction relief finding that:

In this case, the State agreed only to stand silent to Mr. Colvin's request for sentence to an institutional treatment center with a 120-day call back.

-3-

The State fulfilled that promise. The prosecutor never argued that Mr. Colvin should not receive a 120-day call back or be considered for probation. The prosecutor's comments in reply to defense counsel's characterizations of Mr. Colvin as matured and rehabilitated were merely clarifications of fact before the sentencing court. As an officer of the court, the prosecutor had the duty to convey to the court facts about the case and the defendant as long as the specific terms of the plea agreement were not violated. [Stufflebean v. Missouri, 986 S.W.2d 189, 192 (Mo. Ct. App. 1999) (reasoning: "As an officer of the court, the prosecutor had the duty to convey to the court facts about the case and the defendant so long as the specific terms of the plea agreement were not violated.")]. The prosecutor believed that the inferences drawn by the defense counsel were unfair or untrue; therefore, he rebutted the inferences. In clarifying the record for the court, the prosecutor did not breach the specific terms of the plea agreement. The motion court, therefore, did not clearly err in denying Mr. Colvin's Rule 24.035 motion for post-conviction relief. The point is denied.

Colvin v. Missouri, No. WD 57363 (Mo. Ct. App. Feb 15. 2000) (unpublished, but quoted identically by both the State and Colvin).

Colvin submitted a habeas petition under 28 U.S.C. § 2254. A federal magistrate judge considered the petition and found Santobello v. New York, 404 U.S. 257 (1971), was unreasonably applied by the Missouri courts. The district court agreed, adopted the report of the magistrate judge, granted the petition and issued the writ of habeas corpus.

II

Even in the unique context of habeas corpus review, we still review the district court's legal conclusions de novo and its findings of fact for clear error. Hoon v. Iowa, 313 F.3d 1058, 1060 (8th Cir. 2002); Pitts v. Norris, 85 F.3d 348, 350 (8th Cir.

1996) (illustrating our de novo review of a district court's denial of a petition for writ of habeas corpus relief).

The determination as to whether a prosecutor's statement violates a plea agreement is a conclusion of law. United States v. Johnson, 241 F.3d 1049, 1053 (8th Cir. 2001). Thus, we will look anew at the record which was before the district court when it made its decision in this matter. Id. (explaining issues concerning the interpretation and enforcement of a plea agreement are issues of law, which we review de novo).

"The Antiterrorism and Effective Death Penalty Act of 1996 [(AEDPA)] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1849 (2002) (citing Williams v. Taylor, 529 U.S. 362, 403-404 (2000)). In fact, when a claim has been adjudicated on the merits in state court, an application for writ of habeas corpus may only be granted where the state court adjudication:

(1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)&(2) (emphasis added).

[AEDPA's] "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The

court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable.

Bell, 122 S.Ct. at 1850 (discussing Williams); see Sexton v. Kemna, 278 F.3d 808, 811 (8th Cir. 2002) (analyzing Williams).

This latter inquiry is what concerns us on this appeal. The district court held Santobello was unreasonably applied by the Missouri courts. The sole issue before us, therefore, is whether the district court reached the correct legal conclusion. Or in other words, did the Missouri courts apply Santobello in an "objectively unreasonable" manner?

While it is not perfectly clear what "objectively unreasonable" means, Williams, 529 U.S. at 409 (commenting "the term 'unreasonable' is no doubt difficult to define" but is nonetheless familiar to federal judges ) (O'Connor J., concurring, writing for the Court)), the Supreme Court has repeatedly stressed that an unreasonable application is different from an incorrect one. Bell, 122 S.Ct. at 1850; Williams, 529 U.S. at 409-410, 411 (explaining a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"); see Hoon, 313 F.3d at 1061.

Accordingly, "[w]e must deny a writ—even if we disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001). Even more plainly put, we may not grant a writ of habeas corpus unless the relevant state court decision is *both* wrong *and* unreasonable.

-6-

Santobello established the principle that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262; United States v. McCray, 849 F.2d 304, 305 (8th Cir. 1988) (per curiam). So, the State must honor its plea agreements. See McCray, 849 F.2d at 305. Here, the State agreed to "stand silent upon" Colvin's request to be sentenced to an institutional treatment center for 120 days followed by probation, pursuant to Mo. Rev. Stat. § 559.115. When Colvin made his request and offered reasons why the request should be granted, however, the State rose to rebut the very factual assertions which supported Colvin's request for probation.

The Missouri Court of Appeals held "[t]he prosecutor's comments in reply to defense counsel's characterizations of Mr. Colvin as matured and rehabilitated were merely clarifications of fact before the sentencing court" and therefore did not breach the plea agreement. To determine if this legal conclusion amounts to an unreasonable application of Santobello, we must consider if Santobello and its progeny mean that when a prosecutor agrees to stand silent on an issue, he or she has also impliedly agreed not to refute factual assertions made on the issue, which the prosecutor believes are inaccurate.

While both parties direct our attention to McCray, it does not answer this question. In McCray, the *United States* government entered into a plea agreement whereby McCray pleaded guilty to one count of an indictment. 849 F.2d at 305. In exchange for this concession, the government agreed to dismiss the remaining elements of the indictment, "not make any recommendation as to the sentence to be imposed," and "stand mute" at the "initial imposition of sentence." Id. The parties understood the plea agreement did "not bind the United States at any other proceeding." Id.

At the sentencing hearing McCray was sentenced to a fine and a term of imprisonment, but he then requested that he be designated eligible for early parole pursuant to 18 U.S.C. § 4205(b)(1). Id. The district court asked the government for its position on McCray's request, and, despite its agreement, it answered: "we would resist that and ask that the court's sentence stand as given." Id.

The case came before us on McCray's direct appeal, where the government argued that it had not violated the plea agreement because it remained silent until after the district court imposed the sentence, and commented only on the manner in which the sentence should be executed. Id. We rejected this "hypertechnical" distinction, and reasoned that because the plea agreement expressly provided that the government would not be bound at "any other proceeding" it implied the government "would be bound for the entire sentencing hearing." Id. Thus we concluded the government violated its agreement by speaking when it had promised not to, and by taking a position at the sentencing hearing under the same set of like circumstances.

Unlike McCray, the present case is not before us on direct appeal but is instead an appeal from the grant of a habeas corpus petition. This distinction has import. As explained above, our role in the habeas corpus context is limited. If we disagree with a district court's conclusion of law on a direct appeal, for example, we may reverse. In the habeas corpus context we may only do so if we conclude the state court is wrong and unreasonable.

Additionally, McCray does not address whether a prosecutor has the right to correct factual misstatements without violating a plea agreement to stand mute. Moreover, research has not revealed and counsel has not provided any Eighth Circuit or Supreme Court case directly on point. We have held, however, that in the habeas corpus context, the objective reasonableness of a state court's application of Supreme Court precedent may be established if our sister circuits have similarly applied the precedent. Sexton, 278 F.3d at 812-13.

In United States v. Block, the Fifth Circuit addressed the issue by reasoning:

[United States v. Avery, 589 F.2d 906 (5th Cir. 1979)] and [United States v. Crusco, 536 F.2d 21 (3d Cir. 1976)] both affirm that an agreement to stand mute or to take no position on the sentence restricts the Government's right to make certain types of statements to the court. However, neither case stands for the broad proposition that by making such agreements the Government forfeits all right to participate in either the pre-sentence investigation or the sentence hearing. Instead, the cases simply hold that an agreement to stand mute or take no position prohibits the Government from attempting to influence the sentence by presenting the court with conjecture, opinion, or disparaging information already in the court's possession. Efforts by the Government to provide relevant factual information or to correct misstatements are not tantamount to taking a position on the sentence and will not violate the plea agreement.

A prosecutor has a duty to insure that the court has complete and accurate information concerning the defendant, thereby enabling the court to impose an appropriate sentence. Thus if an attorney for the Government is aware that the court lacks certain relevant factual information or that the court is laboring under mistaken premises, the attorney, as a prosecutor and officer of the court, has the duty to bring the correct state of affairs to the attention of the court. Quite aside from that duty, a prosecutor, if permitted by the sentencing judge, may recommend a particular sentence based upon the facts before the court. As part of a plea agreement, the Government is free to negotiate away any right it may have to recommend a sentence. However, the Government does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court. Such an agreement not only violates a prosecutor's duty to the court but would result in sentences based upon incomplete facts or factual inaccuracies, a notion that is simply abhorrent to our legal system.

660 F.2d 1086, 1090-92 (5th Cir. 1981) (citations and footnotes omitted). The reasoning of Block has been adopted by the Fourth Circuit as well. E.g.,United States v. Perrera, 842 F.2d 73, 75 (4th Cir. 1988) (per curiam) (holding the government did not violate its plea agreement with a defendant because, in addition to specifically retaining the right to comment at the sentencing hearing concerning Defendant's conduct and background, "the prosecuting attorney had a duty to bring all relevant information about [Defendant] to the court's attention at the time of sentencing"); United States v. Dail, 1991 U.S. App. LEXIS 315, * 7 (4th Cir. May 9th 1991) (unpublished) (holding the government was required by law to correct a defendant's misrepresentations at a sentencing hearing, and doing so did not violate the plea agreement);

In United States v. Mondragon, 228 F.3d 978 (9th Cir. 2000), the Ninth Circuit encountered a similar situation. In Mondragon, the defendant entered into a plea agreement by which he agreed to plead guilty to certain counts of an indictment in exchange for the government's promise to "make no recommendation regarding sentence." 228 F.3d at 979. At the sentencing hearing, defense counsel commented "Ray does have a lengthy criminal history, I think it's reflected in the history that his crimes, while they cannot be diminished, are petty in nature." Id. The district court then asked the prosecutor if the government had a response. Id. The prosecutor responded by stating in part: "Just to point out that there's no misconstruction of the history, we just point out to the Court the serious nature of some of the listed offenses in there and also point out that, just under my looking at this criminal history that we have in front of us, that approximately 25 percent of the time the defendant's been arrested he has run or resisted and that 45 percent of the time he has failed to appear or warrants have been issued or he's had a probation violation." Id.

In resolving the case the Ninth Circuit reasoned that "[b]ecause the prosecutor's comments did not provide the district judge with any new information or correct any factual inaccuracies, the comments could have been made for only one purpose: to

-10-

influence the district court to impose a harsher sentence than that suggested by appellant's counsel." Id. at 980. The Ninth Circuit, therefore, also prohibits a prosecutor from attempting to influence the sentence when he or she has agreed not to. Id. Implicit in this decision is an acknowledgment that a prosecutor may correct any factual inaccuracies made by the defendant at sentencing without violating the plea agreement.

Similarly, in United States v. Clark, 55 F.3d 9 (1st Cir. 1995), the First Circuit encountered such a situation. Clark entered into a plea agreement with the government where the government promised not "to oppose a three (3) level reduction in the defendant's Adjusted Offense Level under the Sentencing Guidelines, based upon the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense." 55 F.3d at 10. Prior to sentencing, the government submitted a sentencing memorandum outlining proposed guideline adjustments to be taken in light of alleged obstruction of justice which was discovered subsequent to the plea agreement. Id. at 10-11. Clark objected, arguing this memorandum violated the plea agreement. Id. at 11. The First Circuit agreed, reasoning:

> While it is true that the government had not only the ability but the duty to draw facts to the court's attention . . . we think the government did more in this case. Rather than merely drawing facts and law to the court's attention, or answering factual or legal questions posed by the court, the government instead indicated that it opposed an adjustment for acceptance of responsibility and effectively argued against it by stating that this was not an 'extraordinary' case.

Id. at 13. Thus the First Circuit will not allow "end-runs" around Santobello. Id. at 12 (quoting United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992)). But it also recognizes that a prosecutor may draw facts to the court's attention without violating a plea agreement to stand mute.

-11-

Our sister circuits thus make clear that prosecutors may sometimes speak even though they have promised not to, and still not run afoul of Santobello. Regardless of whether the Fifth, Fourth, Ninth or First Circuits would conclude that this case is at peace with Santobello, the courts of Missouri did. The question for us becomes: whether it was reasonable for the Missouri courts to determine that the prosecutor's remarks were undertaken only to correct Colvin's attorney's misstatements, and were not, instead, undertaken in an attempt to "influence the sentence by presenting the court with conjecture, opinion, or disparaging information already in the court's possession[?]" Block, 660 F.2d at 1091.

The Missouri Court of Appeals concluded, like the trial court it affirmed, that the prosecutor's comments were undertaken only to reply to and clarify defense counsel's factually incorrect assertions. Colvin's attorney claimed his client spent his previous incarceration maturing and otherwise being rehabilitated. The fact is, however, there was virtually no lapse in Colvin's criminal behavior. When Colvin was free from confinement he was perpetrating crimes. To suggest otherwise may be reasonably considered a misstatement of fact.

As we expressed at the outset, under AEDPA we must give substantial deference to a state court's legal conclusions. We may not grant a petition for a writ of habeas corpus unless the relevant state court decision is both wrong and unreasonable. May, 251 F.3d at 716. Here we cannot say the Missouri court's application of Santobello was unreasonable. This is not to say we agree with the court's application or abandon our position in McCray, 849 F.2d at 305 (rejecting a "hypertechnical" distinction and opting instead for a broader view of what violates a plea agreement). Even if we might find evidence in the record which would lead us to disagree with the Missouri court's conclusion, it is improper to undermine a state court decision unless it is also unreasonable. We therefore conclude, as we must, that the district court should not have granted the habeas petition.

Accordingly, the judgment is reversed, and the case is remanded to the district court with directions to deny the petition.

HEANEY, Circuit Judge, dissenting.

I would affirm the judgment of the district court. It applied the correct legal standard in reaching its decision and correctly held that the state court decisions were an unreasonable application of the Supreme Court's precedent in Santobello v. New York, 404 U.S. 257 (1971).

It is clear to me that the prosecutor breached the plea agreement by commenting on petitioner's request for a probationary sentence after promising to take no position on the matter. I agree with the district court that while the prosecutor was free to comment on the presentence report with respect to the petitioner's status as a persistent offender and on the details of the charged crime, he went beyond outlining those details and implicitly opposed petitioner's request for a sentence of probation pursuant to Mo. Rev. Stat. § 559.15. As the district court stated: "The prosecutor himself realized he was breaking his promise by beginning with, 'Your Honor, I've agreed to stand silent today, but . . . .'" The prosecutor's statements were not a clarification of the facts; they were simply his impression of the petitioner. This is obvious from the words of the prosecutor. See e.g., ante at 3 ("I don't think it can be said he's matured a lot . . . .") It is also obvious that the theme of the prosecutor's soliloquy was that the petitioner was not a good person, unfit for probation. This is clearly argument, rather than a clarification of confused facts. In a factually similar situation, the Ninth Circuit said:

> The prosecutor's comments . . . did not provide the district judge with any information which he did not already have before him. What the prosecutor did was to make certain that there was "no misconstruction of the history" ([defense] counsel had construed the

-13-

prior offenses as "petty in nature"), by pointing out the "serious nature" of the prior offenses.

Because the prosecutor's comments did not provide the district judge with any new information or correct any factual inaccuracies, the comments could have been made for only one purpose: to influence the district court to impose a harsher sentence than that suggested by appellant's counsel.

United States v. Mondragon, 228 F.3d 978, 980 (9th Cir. 2000). Likewise here, the prosecutor's "clarification" of facts was essentially argument to the sentencing court that Colvin was not amenable to probation. While the district court may well have reached this conclusion on its own, the prosecutor had agreed to remain silent on the issue; failing to do so violated the plea agreement.

There is an additional reason for awarding petitioner relief. The state motion court based its denial of relief on its finding that Colvin was never promised by his counsel or the prosecutor that he would receive probation if he pled guilty to the three counts outlined in the majority's opinion. Thus, he was not prejudiced when the district court refused to give him an authorized probationary sentence. This reasoning misses the point. The question is whether the prosecutor violated the basis on which the plea was entered when he, in effect, said that Colvin was not entitled to probation. The fact that the state motion court did not fully consider Colvin's argument is an additional reason for remanding the matter for resentencing.

We do not know what the sentencing judge would have done had the prosecutor honored the plea agreement and remained silent. The sentencing laws applicable to Colvin clearly provided for the possibility of a probationary sentence. The district court recognized this fact when it ordered that the case be remanded to state court for sentencing by another judge to impose sentence following a hearing consistent with the plea agreement. I would uphold that decision.

-14-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.