# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2906

_____

United States of America,

        Appellee,

   v.

E.V.,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of Minnesota.
\*
\*
\*

_____

Submitted: May 14, 2007
Filed: September 14, 2007

_____

Before BYE and SMITH, Circuit Judges, and NANGLE,[1] District Judge.

_____

NANGLE, District Judge.

Pursuant to his plea of guilty, Defendant-Appellant E.V.[2] was convicted of conspiracy to distribute 700 pounds of marijuana, in violation of 21 U.S.C. §§

---

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]This case is under seal and therefore initials are used to refer to certain individuals.

841(b)(1)(B) and 846. After conducting an evidentiary hearing, the district court[3] imposed a sentence of forty-six months' imprisonment, to be followed by four years of supervised release. Appellant appeals his sentence, alleging the court erred in: (1) denying Appellant's motion to enforce the plea agreement; and (2) denying Appellant's motion to sanction the government for failing to disclose evidence.[4] Appellant urges this Court to vacate his sentence and remand for re-sentencing. We affirm.

## I. BACKGROUND

The sentence at issue in this appeal arises from Appellant E.V.'s participation in the collection of a large drug debt. E.V.'s arrest was the culmination of a series of events that unfolds much like a Hollywood movie script involving the seedy underworld of major drug traffickers, law enforcement, and the interaction between the two. Appellant's role in this saga began when he was arrested by United States Customs agents in 2001 while attempting to cross into the United States from Mexico while in possession of forty pounds of marijuana. While in custody for that conduct, E.V. ascertained information that a fellow inmate, major drug trafficker Marcos Antonio Escobar-Blancas, was seeking to hire a hit man to kill two witnesses who intended to testify against him in court.

E.V. shared his information about the potential murders-for-hire with the Federal Bureau of Investigations ("F.B.I."), and the F.B.I. responded by employing E.V. as a Cooperating Witness. E.V.'s job as a confidential informant entailed

[3]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[4]Appellant's brief also contains a third section entitled "prosecutorial misconduct as the basis for sanctions or sentence reduction." However, this third section is essentially an extension of the second, and the contents of these two related sections are therefore discussed together.

ingratiating himself to Escobar-Blancas, and posing as a hit man while wearing a recording device to monitor and document their conversations. The conversations eventually revealed that several corrupt El Paso County Deputy Sheriff Officers were working with Escobar-Blancas and providing him with information about the target witnesses. Based on the information provided by E.V., the witnesses were protected and two corrupt officers were convicted; in turn, E.V.'s federal charge relating to the marijuana offense was dismissed, and he was eventually compensated with a $65,000 payment from the F.B.I.

During his work on the Escobar-Blancas murder-for-hire case, E.V. formed an association with Special Agent Rich Schneider of the El Paso Division of the F.B.I., with whom he spoke on a daily basis and met with at least three to four times per week. After the close of the Escobar-Blancas matter, E.V. and Schneider continued to work together, with E.V. operating in the illegal drug world and the Mexican Mafia and providing the F.B.I. with intelligence about criminal activities in the El Paso area, the Southern United States and Mexico. The relationship between E.V. and Schneider continued until E.V. entered the Witness Protection Program ("WITSEC") in 2002. The F.B.I. attributes the following "Statistical Accomplishments" to the assistance E.V. provided the El Paso Division of the F.B.I.: (1) nine subjects arrested; (2) ten complaints/indictments filed; (3) five convictions; (4) five vehicle seizures (valued at $43,190.00); (5) $5,075 worth of assets forfeited to the government; and (6) $21,000 in drug seizures.

During his time in the Witness Protection Program, E.V. remained in contact with Agent Schneider, although on an infrequent basis. Upon leaving WITSEC in 2004, E.V. contacted Agent Schneider, expressing his desire to resume his role as a cooperating witness for the F.B.I.. At that time, however, E.V. was still under the supervision of the United States Parole Commission ("Parole Commission"), and Agent Schneider therefore instructed E.V. to refrain from engaging in any operations until his parole expired, warning E.V. that such activity would constitute a parole violation.

Despite the fact that he had not yet been deemed a confidential informant, E.V. continued to convey information to Agent Schneider, and Agent Schneider followed up on that information on two occasions. In one instance, Agent Schneider met with a woman whose name and number E.V. had supplied, and that woman, in turn, met with Agent Schneider and provided him with drug-activity-related information. In another instance, Agent Schneider followed a tip provided by E.V. (and discussed over the course of seven phone calls); the tip led to the seizure of fifty-three pounds of marijuana. Agent Schneider told E.V. that the F.B.I. would consider compensating E.V. for his assistance in the seizure.

The next time E.V. relayed information to Agent Schneider, it concerned a drug dealer who went by the name of "Gato." E.V. had spoken with Gato, who offered E.V. the opportunity to travel to Minnesota and collect a drug debt in the amount of approximately $400,000 and return it to El Paso. Agent Schneider attempted to obtain the authorization from the Parole Commission necessary for E.V. to engage in this activity, but faced difficulties in doing so and specifically told E.V. not to move forward until the requisite approval was in place. At Schneider's direction, E.V. stalled Gato for about three days, at which point Gato warned E.V. that he would give the job to someone else. Acting against Agent Schneider's warnings, E.V. proceeded to Minnesota, where he collected a portion of the drug money, and was subsequently arrested by the F.B.I. and Drug Enforcement Administration ("D.E.A."), who were monitoring and wiretapping C.B., the person owing Gato the drug debt E.V. was sent to collect.

After his arrest in Minnesota, E.V. was released on bond in order to assist the authorities in apprehending Armando Armendariz-Garcia, an employee of Gato and co-defendant in this case. The extent of E.V.'s activities at this stage are unclear, a fact which E.V. attributes to alleged discovery violations by the prosecution, an argument discussed further below. During the period after his arrest, E.V. maintained contact with Agent Schneider, who continued to seek the necessary approval to allow E.V. to arrange a meeting with the would-be recipient of the drug money, Gato's

boss, major Juarez Cartel drug dealer and F.B.I. target, "Danny," in El Paso. The authorization process, however, turned out to be of such a nature that it could not be expedited, and Agent Schneider therefore terminated the process.

For his participation in the illicit activities that unfolded in Minnesota, E.V. was indicted for conspiracy to distribute in excess of 1,000 kilograms (2,200 pounds) of marijuana in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846.[5] He pled guilty to the lesser-included offense of conspiracy to distribute 700 pounds of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. After a sentencing hearing, the district court sentenced E.V. to forty-six months' imprisonment. This appeal followed.

## II. DISCUSSION

### A. Breach of Plea Agreement

Appellant asserts that the district court committed reversible error by denying his Motion to Enforce the Plea Agreement. Appellant argues that the government breached the plea agreement by: (1) introducing evidence that E.V. possessed a firearm during the commission of the offense; and (2) arguing facts against his own motion for a downward departure.

Whether the government has breached a plea agreement is a matter of law reviewed de novo. United States v. Van Thournout, 100 F.3d 590, 594 (8th Cir. 1996). Allowing the government to breach a promise that induced a guilty plea violates due process. Santobello v. New York, 404 U.S. 257 (1971); Van Thournout, 100 F.3d at 594. Further, "with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights-to

---

[5] E.V.'s conduct in this case also constituted a parole violation, and he served eighteen months in custody for that offense.

concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." United States v. Jensen, 423 F.3d 851, 854 (8th Cir. 2005) (internal citation omitted). Plea agreements are contractual in nature and should be interpreted according to general contractual principles. Id. (internal citation omitted).

The plea agreement at issue specified that "the parties agree that none of the specific offense characteristics listed under Guideline Section 2D1.1(b) is applicable in this case." This clause encompasses subsection 2D1.1(b)(1), which requires a two-level increase in the base offense level "[i]f a dangerous weapon (including a firearm) was possessed" during commission of the charged offense. U.S. Sentencing Guidelines Manual § 2D1.1(b) (2006).

In preparation for sentencing, E.V. attempted to obtain evidence substantiating his relationship with the F.B.I. and Agent Schneider. The government characterized E.V.'s desire to demonstrate his relationship with the F.B.I. and Agent Schneider as an attempt to litigate the issue of guilt, and informed Appellant of its intention to introduce the testimony of C.B. that Appellant possessed firearms during the commission of the offense.

Prior to the evidentiary and sentencing hearing, Appellant filed a memorandum addressing sentencing factors such as E.V.'s pre- and post-arrest cooperation with the government, the danger posed by his cooperation, the "encouragement he received from the Government to act on their behalf," the nature of his post-arrest incarceration, and other personal factors. The memo also included a discussion of E.V.'s relationship with Agent Schneider. The government filed a response, expressing its disdain with E.V.'s desire to present evidence and argument regarding Agent Schneider's encouragement of E.V.'s conduct. The government also announced its position that E.V.'s sentencing arguments forced it to offer the firearm evidence in rebuttal. The government's response, in turn, prompted E.V. to file a Motion for Sanctions and a Motion to Enforce Plea Agreement.

-6-

At the outset of the sentencing hearing, the district court heard argument on the Motion for Sanctions, but did not enter a ruling, and proceeded into witness testimony. After Agent Schneider and E.V. testified, counsel for Appellant again raised the issue of whether the government's introduction of testimony that E.V. possessed a firearm constituted a violation of discovery rules and the plea agreement. The court denied the Motion, stating, "[C.B.] will be able to testify to the guns. I want to hear about these guns. The first time I heard about guns was the last hearing. This is a strange case." C.B. then testified that when E.V. arrived to collect the drug debt, he was accompanied by two armed men.

Appellant argues that the government's introduction of the firearm testimony constituted a breach of the plea agreement. Appellee responds by arguing that the evidence was introduced in rebuttal to E.V.'s sentencing arguments, and did not constitute a breach of the plea agreement.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262. The government's agreement with E.V. that none of the offense characteristics contained in section 2D1.1(b) were applicable was an enforceable, bargained-for term of the plea agreement. United States v. Thompson, 403 F.3d 1037, 1040 (8th Cir. 2005) (holding that where the government was aware of facts supporting a higher sentence under section 2K2.1 but entered an agreement deeming narrower provision of section 2K2.1(a) the applicable sentencing provision, the narrower 2K2.1(a) clause "became a bargained-for term of the agreement"). We conclude that the prosecutor's introduction of the firearm testimony constituted a breach of that agreement.

Appellee mistakenly relies on Colvin v. Taylor, 324 F.3d 583 (8th Cir. 2003), as establishing that prosecutors may present evidence in contradiction to a plea agreement so long as the evidence amounts to a correction of fact made for the

benefit of the sentencing court. In <u>Colvin</u>, a case originating from Missouri state court, defense counsel at sentencing characterized Colvin as being both matured and rehabilitated, and the prosecutor replied by discussing facts rebutting that assertion. Colvin argued in his post-conviction collateral attack that the prosecutor's statements constituted a breach of the plea agreement. The Missouri courts rejected Colvin's argument, characterizing the statements as permissible clarifications of fact rather than a violation of the plea agreement. <u>Colvin</u> came before us on appeal from the federal district court, which found that the Missouri courts unreasonably applied <u>Santobello</u> and granted Colvin's habeas corpus petition.[6] Contrary to Appellee's reading of our decision, we did not hold that the prosecutor's statements did not comprise a breach. Rather, after expressly noting that this Court had not previously addressed "whether a prosecutor has the right to correct factual misstatements without violating a plea agreement to stand mute," and that the decision "[was] not to say we agree with the court's application," we held that the Missouri courts had not unreasonably applied federal law.[7] <u>Id.</u> at 588. Therefore, Appellee's argument, which relies solely on <u>Colvin</u> and the assumption that prosecutors in the Eighth Circuit may submit evidence in contradiction to plea agreements where necessary to correct factual misstatements, is fundamentally flawed.

Even assuming <u>arguendo</u> that <u>Colvin</u> stands for the legal proposition cited for by Appellee, <u>Colvin</u> is factually distinguishable from the case at hand due to the

---

[6]We noted the import of the distinction between a direct appeal and an appeal from the grant of a habeas corpus petition, explaining that our limited role in the habeas corpus context allows us to reverse only if we conclude "the relevant state court decision is <u>both</u> wrong <u>and</u> unreasonable." <u>Colvin</u>, 324 F.3d at 587 (emphasis in original).

[7]Our holding was based on our sister circuits' precedent establishing that "prosecutors may sometimes speak even though they have promised not to, and still not run afoul of <u>Santobello</u>." <u>Colvin</u>, 324 F.3d at 590. "The objective reasonableness of a state court's application of Supreme Court precedent may be established if our sister circuits have similarly applied the precedent." <u>Id.</u> at 588 (citation omitted).

differing nature of the agreements at issue. Whereas <u>Colvin</u> involved the question of the prosecutor's ability to present facts when the plea agreement contained a broad, general promise to remain silent,[8] the agreement at issue in the case at bar was more specific–the parties expressly agreed that the offense characteristics contained in section 2D1.1(b) were inapplicable. Although at first blush this distinction may seem insignificant, the specific nature of the parties' agreement dictates that it must be strictly construed and enforced. <u>Santobello</u>, 404 U.S. 257; <u>United States v. DeWitt</u>, 366 F.3d 667, 669-70 (8th Cir. 2004) (citing <u>Margalli-Olvera v. INS</u>, 43 F.3d 345, 351 (8th Cir. 1994)).

We have previously held that the introduction of evidence contrary to a specific stipulation amounts to a breach of the plea agreement. In <u>DeWitt</u>, the parties stipulated to an applicable drug quantity and base offense level, but the government introduced evidence at sentencing in support of a higher drug quantity. After noting that "under ordinary rules of contract interpretation, we give effect to the specific drug quantity and base offense level stipulations . . . over the plea agreement's more general provisions relating to 'relevant conduct,'" we rejected the government's argument that the evidence was permissible rebuttal evidence, and held that the prosecutor breached the plea agreement. <u>Id.</u> at 670 (citations omitted). Similarly, the parties' specific agreement in this case that the offense characteristics of section 2D1.1(b) did not apply precluded the government from introducing evidence to the contrary, either as purported rebuttal evidence or pursuant to the more general agreement that the parties could seek departures from the applicable guideline range.

In <u>Thompson</u>, the parties agreed that "the applicable guideline section for the offense of conviction is § 2K2.1(a)." <u>Thompson</u>, 403 F.3d at 1038. During the sentencing hearing, however, the prosecutor argued that the facts to which Thompson

---

[8]The extent, if any, to which a prosecutor may, in order to make factual clarifications, speak in contradiction to an agreement to remain silent remains an open question in this Circuit.

had stipulated established that he had committed a felonious assault, which, in turn, supported a sentence exceeding that allowed under section 2K2.1(a). <u>Id.</u> In rejecting the government's argument that the prosecutor did not breach the agreement, we noted that a prosecutor could "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case." <u>Id.</u> at 1039-40 (citing Fed. R. Crim. P. 11(e)(1)(C)).[9] We interpreted Rule 11 as providing "greater discretion for bargaining in plea agreements," and as "expressly sanction[ing] the negotiation of a plea agreement such as that entered into here . . ." <u>Id.</u> at 1039. As in <u>Thompson</u>, in the case before us, the discretionary decision[10] made by the government to agree with Appellant that section 2D1.1(b) did not apply became a "bargained-for term of the agreement," permissible under Rule 11 and subject to enforcement.

The enforcement of the provision at issue entails an obligation to refrain from introducing evidence to the contrary; that the prosecutor expressly disavowed seeking the enhancement does not negate this obligation. <u>See</u>, <u>e.g.</u> <u>United States v. Boatner</u>, 966 F.2d 1575, 1579 (11th Cir. 1992) (finding breach where government introduced drug-quantity evidence exceeding amount stipulated to despite prosecutor's statement to court that "the government will stick to its stipulation"). This is especially true where, as here, the government's proffered alternative reasons for admitting the

---

[9]The Federal Rules of Criminal Procedure were amended in 2002, and language similar to that contained in the 1999 version of Rule 11(e)(1)(C) is now found in Fed. R. Crim. P. 11(c)(1)(C) (2007).

[10]In <u>Thompson</u>, we recognized the importance of prosecutorial discretion, noting that the government was aware of the facts supporting a higher sentence under section 2K2.1 when it chose to offer Thompson the plea agreement deeming the narrower provision of section 2K2.1(a) the applicable sentencing provision. Likewise here, the government exercised its discretion in agreeing that "none of the specific offense characteristics listed under Guideline Section 2D1.1(b) is applicable in this case," despite its apparent knowledge of evidence to the contrary.

evidence are questionable.[11]  See United States v. Johnson, 187 F.3d 1129 (9th Cir. 1999) (finding breach where victim impact statement was irrelevant to crime of conviction and was introduced to influence court to impose a sentence higher than agreed-to recommendation).  Accordingly, we hold that the introduction of the firearm evidence, in direct contradiction to the specific, bargained-for terms of the plea agreement, violated the agreement,[12] notwithstanding the prosecutor's pronouncement to the contrary.

Having determined that the government did in fact breach the plea agreement in this case, we must now address the issue of the proper remedy.  When the government breaches a plea agreement, "the defendant is typically given the option of withdrawing his guilty plea or demanding specific performance."  United States v. Goings, 200 F.3d 539, 544 (8th Cir. 2000) (internal citations omitted).  "It is,

---

[11]Appellee maintains that it offered C.B.'s testimony to rebut "E.V.'s false claims that a government agent authorized him to come to Minnesota and collect drug money."  However, E.V. did not claim that he was authorized to undertake the debt-collection activities he engaged in, and in fact acknowledged precisely the opposite.  His testimony was in accord with that of Agent Schneider, who admitted acting on E.V.'s unauthorized tips on prior occasions, and to instructing E.V. to stall Gato while Schneider sought authorization.  Further, the prosecutor acknowledged that C.B.'s testimony might result in a sentencing enhancement.  Appellee's App. 35-36.

[12]The enforcement of agreements such as the one before us does not undermine prosecutors' obligation to apprise the court of facts relevant to sentencing.  Prosecutors can fulfill their duty of candor to the court while simultaneously exercising the "discretion for bargaining [and negotiation] in plea agreements" provided for by Rule 11 and Thompson, and fulfilling the corresponding duty to defendants to uphold the government's end of the bargain. See, e.g., United States v. Keller, 413 F.3d 706, 708 (8th Cir. 2005) (finding no breach of plea agreement where prosecutor, when asked by the district court about agreed-upon base offense level, responded that the government was bound to its agreement and therefore had nothing to add); see also United States v. Gonczy, 357 F.3d 50, 53 (1st Cir. 2004) (duty to bring facts to judge's attention "coexists with the government's duty to abide by a plea agreement").

however, well established that we may affirm a sentence on any grounds supported by the record," and, notwithstanding the government's breach, we have in certain circumstances declined to remand for resentencing. Id. (citing United States v. Varela, 138 F.3d 1242, 1244 (8th Cir. 1998)). For example, in Goings, the government breached the plea agreement by failing to recommend a downward adjustment for acceptance of responsibility. Nevertheless, we affirmed, because it was "clear beyond doubt that [the court] would have imposed the same sentence" regardless of the government's recommendation, and "remanding the case would constitute an exercise in futility." Id. at 544. Likewise here, we find it "clear beyond doubt" that the government's breach did not impact Appellant's sentence. The court adhered to its assurance that "there's not going to be a gun enhancement," and did not increase Appellant's base offense level pursuant to section 2D1.1 or enhance his sentence pursuant to section 5K2.6 based on his alleged possession of a weapon. Sentencing Hr'g Tr. 145.[13] Accordingly, we deny Appellant's request to remand the case for resentencing.

Our holding is bolstered by the fact that the court's authority to depart downward from a Sentencing Guidelines range is circumscribed by the statutory minimum sentence of sixty months' imprisonment. USSG § 5G1.1 (low end of applicable guidelines range is mandatory minimum). The court's authority to depart below the statutory minimum was limited to that allowed by the government's 5K1.1

---

[13]We have previously held that the district court's statement that it was not influenced by the government's breach "does not ameliorate the government's breach," and we acknowledge that this remains the general rule in our Circuit. United States v. McCray, 849 F.2d 304, 305-06 (8th Cir. 1988). However, where, as here, the possible influence of the breach is confined by both the Sentencing Guidelines and other statutory restraints, the sentencing court's decision to impose a sentence unaffected by the government's breach is of great import, as it renders the breach, quite literally, harmless.

motion for downward departure.[14]  18 U.S.C. § 3553(e) (upon government motion, court may sentence below otherwise applicable statutory minimum); 28 U.S.C. § 994(n).  Therefore, the potential impact of the firearm evidence on the court's assessment of Appellant's arguments for additional downward departures from the guidelines range[15] is irrelevant, and cannot form the basis for relief.  See United States v. Gomez, 271 F.3d 779, 781 (8th Cir. 2001) (summarily rejecting sentencing arguments based on government's breach where sentence controlled by  career offender enhancement); see also United States v. Forney, 9 F.3d 1492, 1504 (11th Cir. 1993) (deeming government's breach inconsequential where sentence controlled by mandatory minimum, which could be reduced only pursuant to a 5K1.1 motion by the government).

## B.  Government's Disclosure of Evidence

Appellant alleges that the prosecutor improperly withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and that the district court erred in failing to find prosecutorial misconduct and impose sanctions on the prosecutor for failing to disclose evidence.  The standard of review for alleged

---

[14] Appellant also asserts that the government breached the plea agreement by "arguing against its own motion for downward departure."  We disagree.  Appellant essentially challenges the government's assessment of his assistance and corresponding recommendation.  However, the plea agreement did not contain a promise to make the motion, much less to make a certain recommendation.  The government made the motion and made the full extent of Appellant's cooperation known to the court, thereby fulfilling its obligations under the agreement.  Accordingly, Appellant's argument fails. Further, the amount of departure warranted by Appellant's assistance was committed to the discretion of the court.  The record indicates that the court considered all of the factors relevant to sentencing, including E.V.'s factual and legal arguments related to assistance and other departures, and Appellant has failed to demonstrate the sentence was unreasonable.

[15]Appellant sought departures pursuant to USSG §§ 5K2.11 (lesser harm) and 5K2.16 (voluntary disclosure).

violations of <u>Brady</u> is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).

Appellant claims that the prosecutor committed misconduct by failing to disclose evidence regarding: (1) C.B.'s statement that Appellant possessed a firearm; and (2) Appellant's work with the federal authorities, both in El Paso and Minnesota. The district court did not use C.B.'s testimony as a basis for either an increased offense level or an upward sentencing departure when determining Appellant's sentence. Further, the effect, if any, of the testimony on Appellant's request for additional downward departures is irrelevant due to the statutory minimum. Therefore, Appellant cannot show that, had the firearm evidence been disclosed at an earlier juncture, the result of the proceeding would have been different, and his claim fails. Similarly, Appellant fails to demonstrate that, had he received the sought-after documentation relating to his activities with the F.B.I., the result of his sentencing hearing would have been different. Both Appellant and Agent Schneider testified about Appellant's history with the El Paso F.B.I., and D.E.A. Agent Erick Smith testified as to E.V.'s activities subsequent to his arrest. The sentencing court considered E.V.'s assistance to the authorities, and granted a twenty-three percent departure from the otherwise applicable minimum sixty-month sentence. E.V. has failed to identify any evidence which, if disclosed, would have resulted in a different outcome. Accordingly, Appellant's <u>Brady</u> claim fails.

The judgment is accordingly affirmed.

_____